## Gary L. PALMER

v.

## Marion S. BARRY, Jr., Mayor, et al., Appellants.

### No. 89–7016.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 21, 1989.

Decided Jan. 30, 1990.

Denis F. Gordon, with whom Brad W. Spencer, Washington, D.C., was on the brief, for appellee.

Martin B. White, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Acting Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellants.

Before EDWARDS, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1982) ("Title VII"). The appellee, Gary L. Palmer, a former Battalion Chief with the District of Columbia Fire Department ("Fire Department"), claims that the appellants, several high-ranking officials of the District of Columbia (the "District"), unlawfully discriminated against him from 1982 through his retirement in August of

1985, by failing to promote him to the rank of Deputy Fire Chief. In pursuit of this claim, Palmer first filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 9, 1985; he then filed a complaint in the District Court on May 14, 1987.

After a two-day trial, the District Court found that the District had discriminated against Palmer, and awarded him back pay and interest for the period from 1982 through his retirement. In reaching this result, however, the trial judge appeared to find that the District's discriminatory treatment of Palmer ceased after mid–1984. If so, then—as the District argues on appeal—Palmer may have filed his EEOC charge outside of the time limit required by 42 U.S.C. § 2000e–5(e) (1982).[1]

Because we cannot discern the District Court's findings on certain critical facts, we are unable to assess the merits of the District's argument on timeliness. Accordingly, we must remand the case for further proceedings.

## I. BACKGROUND

### A. *Factual*

This case concerns promotions within the District of Columbia Fire Department during a period extending from 1982 through August 30, 1985. The parties' pretrial stipulations indicate that, from 1982 until August 30, 1985, the Fire Department consisted of six divisions. Each division had one Deputy Chief, with the exception of the Communications Division, which had no Deputy Chief, and the Firefighting Division, which had three Deputy Chiefs (one for each of three shifts). In all, there were seven Deputy Chiefs during the cited time

period. Only the Fire Chief and two Assistant Fire Chiefs ranked above the Deputy Chiefs in the Fire Department hierarchy. Battalion Chiefs, of which there were more than thirty, ranked just below the Deputy Chiefs. All appointments to the positions of Battalion Chief, Deputy Chief and Assistant Fire Chief were made by the Mayor (or his designee) on advice from the Fire Chief.

Plaintiff–Appellee Palmer, who is white, was a member of the Fire Department from 1959 through August 30, 1985. He held the rank of Battalion Chief and Director of the Communications Division when he retired in 1985. Defendant–Appellant Marion Barry, Jr., is the Mayor of Washington, D.C. Defendant–Appellant Theodore R. Coleman is Chief of the Fire Department, a position that he has held on a permanent basis since March 16, 1983. Defendant–Appellant Thomas R. Downs was City Administrator from May 23, 1983, through December 31, 1987. His predecessor, Elijah Rogers, served as City Administrator from early 1979 to May 23, 1983.

In the late seventies, Mayor Barry issued an order to make the Communications Division a separate Fire Department Division. In August of 1982 then acting Fire Chief Coleman, along with Palmer and one other person, planned to implement that order. Their plan called for the creation of a new position of Deputy Chief to head the upgraded Communications Division. Coleman told Palmer that he would recommend that Palmer be promoted from Director of the Communications Division and Battalion Chief to the newly created Deputy Chief position. According to the parties' stipulations, "[d]espite promises, beginning in

---

1. This provision states:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authori-

ty to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency. 42 U.S.C. § 2000e–5(e) (1982).

May 1982 that he would promote Palmer to the rank of Deputy, Chief Coleman never did so even though Coleman believed that Palmer was performing the Director's job in an exemplary fashion." Appendix ("A.") 15. Palmer served as the Director of the Communications Division from 1980 until his retirement on August 30, 1985. Through nearly that whole period, he also held the rank of Battalion Chief.

Soon after Palmer had announced his planned retirement, Chief Coleman appointed Carl Archer, a Battalion Chief from another Division, to the Communications Division. On September 11, 1985, within two weeks of Palmer's retirement, Chief Coleman appointed Archer, who is black, to the posts of Acting Deputy Chief and head of the Communications Division. Archer was initially paid at the rate of a Battalion Chief; however, when his appointments were made permanent on December 3, 1985, he took the full rank and pay of a Deputy Chief.

### B. *Procedural*

On December 9, 1985, Palmer filed a discrimination complaint with the EEOC. The EEOC then referred the complaint to the District of Columbia Office of Human Rights ("OHR") on December 17, 1985.[2] *See* Record Document No. 40, Exhibit 3. After both the OHR and the EEOC reviewed his complaint, the EEOC sent Palmer a Notice of Right to Sue on February 19, 1987. *See* Record Document No. 8, at 91. Palmer filed suit in the District Court within ninety days thereafter (on May 14, 1987), as required by 42 U.S.C. § 2000e–5(f) (1982). In his complaint, Palmer alleged that the Fire Department had discriminated against him on the basis of his race in refusing to promote him to Deputy Chief from May of 1982 to the date of his retirement, August 30, 1985.

As an affirmative defense to the complaint, the appellants contended that Palmer's charge of discrimination was untimely

under Title VII. Shortly before trial, the District Judge granted Palmer's motion to strike this defense, concluding that "the plaintiff's EEOC charge was filed within 300 days of [the] discrimination alleged in his EEOC charge," and that "the allegations contained in the plaintiff's EEOC charge as well as the complaint filed in this action are deemed to allege a continuing violation of Title VII ... from May 1982 until August 30, 1985." *Palmer v. Barry*, Civ.Action No. 87–1304 (D.D.C. April 1, 1988), *reprinted in* A. 11–12.

The District Court issued the first of the two opinions that are central to our analysis of this case after a two-day trial held on April 5 and 6, 1988. *See Palmer v. Barry*, Civ.Action No. 87–1304, 1988 WL 104951 (D.D.C. Sept. 30, 1988) ("*Palmer I*"), *reprinted in* A. 61. In *Palmer I*, the District Court concluded that the stipulated facts were sufficient to make out a case that someone caused Chief Coleman to withhold Palmer's promotion, despite his qualifications therefor, in order to fill the higher position with a black; that this *prima facie* case was confirmed by evidence at trial; and that the District of Columbia had a race-conscious promotions policy between 1982 and 1985, pursuant to which the District sought to achieve racial balance among Deputy Chiefs. *See Palmer I*, slip op. at 3–5, *reprinted in* A. 63–65.

In *Palmer I*, the trial court viewed Palmer as a victim of the city's policy, because he apparently had been denied a promotion on racial grounds. However, in reaching this conclusion, the District Court also went on to suggest that the District's discrimination against Palmer may have been limited to the period from 1982 to mid–1984. On this point, the trial court found the following:

> Defendants have adduced evidence of nondiscriminatory reasons for their failure to promote plaintiff after mid–1984, i.e., during the tenure of Deputy Administrator Downs. Downs denied Chief Coleman's 1984 recommendation for the

---

**2.** Under Title VII, the District of Columbia is a deferral jurisdiction for purposes of processing discrimination complaints. The local agency in the city that handles employment discrimina-

tion claims (*i.e.,* the so-called "706 Agency") is the District of Columbia Office of Human Rights. *See* 29 C.F.R. § 1601.74 (1989).

promotion of plaintiff due to budgetary concerns, i.e., that the Fire Department was becoming top heavy with Deputy Chiefs. Moreover, in 1985, Downs reversed himself and conditionally acceded to Coleman's recommendation and his concern that unless promoted plaintiff would resign. Downs conditioned his approval upon a commitment from plaintiff that, if promoted, he would remain on duty for 18 to 24 months. As a result of a breakdown of communications between Downs, Chief Coleman and the plaintiff, plaintiff resigned without knowing that Downs had conditionally approved plaintiff's promotion if he would agree to serve for 18 to 24 months.

However, defendants articulate no similar nondiscriminatory explanation for the plaintiff's nonpromotion between 1982 and mid–1984 when Rogers' successor, Downs, was confronted with plaintiff's problem.

*Id.* at 5, *reprinted in* A. 65.

"In sum," the trial court concluded that "the evidence and inferences establish that it is more likely than not likely that denial of plaintiff's promotion *from 1982 to mid–1984* proximately resulted from a racially motivated policy to hold back some white promotions to Deputy Chief until the number of black deputies equalled or exceeded the number of white deputies." *Id.* at 6, *reprinted in* A. 66 (emphasis added). Because there was "no showing of an established affirmative action plan justified by a demonstration of prior discrimination," *id.,* the trial court held that the District of Columbia's failure to promote Palmer violated Title VII. Palmer was awarded "back pay equal to the difference between the salary and benefits that he received as a Battalion Chief and what they would have been if he had been promoted to Deputy Chief within 10 days after the Mayor's office received Chief Coleman's 1982 recommendation and had remained in that position until he retired on August 25, 1985," plus interest. *Id.* at 7, *reprinted in* A. 67.

Following the District Court's issuance of the decision in *Palmer I*, the defendants filed a post-trial motion for modification of judgment. The defendants argued that if, as found in *Palmer I*, the discrimination against Palmer ceased in mid–1984, then Palmer's EEOC complaint, filed in early December of 1985, was untimely under 42 U.S.C. § 2000e–5(e) (1982).

The District Court rejected the appellants' argument on timeliness. First, the trial court suggested that Palmer's complaint was not untimely because, even though he had not shown that discriminatory behavior occurred within the 300–day time limit under Title VII, he did prove "earlier related incidents of ... discrimination." *See Palmer v. Barry*, Civ.Action No. 87–1304, slip op. at 1–2, 1988 WL 129829 (D.D.C. Nov. 18, 1988) ("*Palmer II*"), *reprinted in* A. 69–70 (citing *McKenzie v. Sawyer*, 684 F.2d 62 (D.C.Cir.1982)). "Furthermore," the court continued, "while this court found that defendants have adduced evidence of nondiscriminatory reasons for their failure to promote [Palmer] after mid–1984, the court did not find that [Palmer's] allegations of discrimination after mid–1984 were unconnected with his allegations of discrimination before that time." *Id.* at 2, *reprinted in* A. 70. In its final comment on this argument, the trial court repeated its conclusion from *Palmer I* that the appellee had made out a *prima facie* case that someone "caused" Chief Coleman to "keep [Palmer] out of the new position until he retired so that the position could be given to his black successor." *Id.* (quoting *Palmer I*, slip op. at 3, *reprinted in* A. 63). After rejecting several of the District's other contentions relating to *Palmer I*, the District Court denied the motion for modification.

## II. ANALYSIS

### A. *District's Argument on Appeal*

On appeal, the District raises the same issue of timeliness that it raised before the District Court in its post-trial motion. Since—according to the District's reading of *Palmer I*—the District stopped discriminating against Palmer in mid–1984, the EEOC complaint he filed on December 9, 1985, was untimely. The District argues that in order for Palmer to receive relief

under Title VII, he must show that some actual discrimination took place *within* 300 days prior to December 9, 1985, even under a "continuing violation" theory of liability. Moreover, the District complains that the District Court failed to complete the full Title VII analysis called for by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). More specifically, the District argues that, although Palmer concededly made out his *prima facie* case that the District discriminated against him in denying him a promotion, Palmer's *prima facie* case was refuted with regard to the period between mid–1984 and Palmer's retirement in August of 1985. Since the District Court never found any pretext in the reasons offered by the District for not promoting Palmer after mid–1984, the District contends that there was no discrimination against Palmer within 300 days prior to the date on which Palmer filed his complaint. *See* Brief for Appellants at 10–14.

B. *Adequacy of the Trial Court's Findings*

The trial court's decision in this case is ambiguous in its findings, so we are at a loss to assess the merits of the appellants' appeal. On the one hand, the District Court's judgment in *Palmer I* suggests that between 1982 and mid–1984 the District discriminated against Palmer in failing to promote him, but that after mid–1984 the District acted toward Palmer pursuant to legitimate business reasons. If so, and if there is no reason to toll Title VII's charge-filing period, then, as Palmer's counsel conceded at oral argument, his complaint must be rejected as untimely. However, *Palmer I* and *Palmer II* also suggest that the District's discriminatory treatment of Palmer may have extended beyond mid–1984. *See, e.g., Palmer I,* slip op. at 3, *reprinted in* A. 63 (District offered no evidence that "policy" of making

race a "factor in Fire Department promotions" had changed); *id.* at 4–5, *reprinted in* A. 64–65 (Mayor's policy goal was achieved "in part … by leaving the Communications Division without a Deputy Chief until after plaintiff retired and was replaced"); *Palmer II,* slip op. at 2, *reprinted in* A. 70 (Palmer's allegations of discrimination after mid–1984 not found "unconnected" with his allegations of discrimination before that time).

■ It is possible that the trial court intended to find that the District had a "mixed motive" for not promoting Palmer after mid–1984. However, such a finding would require an application of *Price Waterhouse v. Hopkins*, —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Alternatively, the trial court may have believed that only the *effects* of the District's earlier discriminatory treatment of Palmer remained after mid–1984. But on this theory—absent some reason to toll the statute—the complaint was filed outside Title VII's filing period. It is well settled that "effects" alone are not sufficient to defeat a time bar, even under a "continuing violations" theory of liability. *See Milton v. Weinberger*, 645 F.2d 1070 (D.C.Cir.1981); *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

■ While we recognize that there are several possible ways to construe the District Court's findings and conclusions, no single interpretation is evidently correct. Thus, because we cannot discern the District Court's rationale for its judgment, and because the trial court's decision contains seemingly inconsistent findings, we must remand for further proceedings.

On remand, the District Court must make specific findings as to whether the District discriminated against Palmer after mid–1984, applying the principles of either *Burdine* and *McDonnell Douglas* or *Price Waterhouse*. If there was such discrimination, then it would appear that Palmer's complaint was timely filed.[3] If the com-

---

3. The Supreme Court has established that in the interplay of 42 U.S.C. § 2000e–5(c) and (e), a party must ordinarily (*i.e.*, unless the statute is

tolled) file with the EEOC no later than 240 days after the last act of discrimination occurred, unless the local 706 agency relinquishes its juris-

plaint was not timely filed, then the trial court must determine whether an application of the "discovery rule" might toll the limitations period.[4] *See Wislocki–Goin v. Mears*, 831 F.2d 1374, 1380–81 (7th Cir. 1987), *cert. denied*, 485 U.S. 936, 108 S.Ct. 1113, 99 L.Ed.2d 274 (1988) (discovery rule available for Title VII claim); *Tucker v. United Parcel Service*, 657 F.2d 724, 726 (5th Cir.1981) (same); *see also Mohasco Corp. v. Silver*, 447 U.S. 807, 818 n. 22, 100 S.Ct. 2486, 2493 n. 22, 65 L.Ed.2d 532 (1980) (reserving judgment on availability of discovery rule). If the appellee requests the trial court to consider the applicability of a discovery rule, then the court must also consider whether Palmer is free to raise the issue at this juncture in the litigation (not having raised it during the initial trial).

### III. CONCLUSION

The case is hereby remanded for further proceedings consistent with this opinion.

*So ordered.*

diction over the claim prior to the lapse of the 300–day period. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491 n. 16, 65 L.Ed.2d 532 (1980).

4. It might be argued that Palmer could not reasonably have discovered that the District had discriminated against him until after he retired and the District then promoted a black person to the post to which it had declined to promote Palmer. However, there is also evidence on the record to suggest that Palmer might reasonably have known about any such alleged discrimination before he retired. We take no position on whether there is an application for a discovery rule in this case.