**Gary L. PALMER, Plaintiff,**

v.

**Marion BARRY, et al., Defendants.**

**Civ. A. No. 87–1304–LFO.**

United States District Court, District of Columbia.

July 8, 1992.

Opinion on Remand July 15, 1992.

Frank Petramalo, Jr., Denis F. Gordon, Gordon & Barnett, Washington, D.C., for plaintiff.

George C. Valentine, Asst. Corp. Counsel, Washington, D.C., for defendants.

ON FURTHER CONSIDERATION

OBERDORFER, District Judge.

Plaintiff, Gary L. Palmer, a former Battalion Chief with the District of Columbia Fire Department, claims defendants (the District of Columbia or the District) unlawfully discriminated against him from September 1982 through his retirement in August 1985. He alleges that he was not promoted to the position of Deputy Fire Chief because of the District's policy of equalizing white and black promotions in violation of Title VII. This employment discrimination case is currently before the Court on remand from the Court of Appeals. *See Palmer v. Barry,* 894 F.2d 449 (D.C.Cir.1990).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on December 9, 1985 and filed this pending suit on May 14, 1987. After a two day bench trial, the Court, in its September 30, 1988 Memorandum, found that the District discriminated against plaintiff from September of 1982 until his retirement on August 30, 1985, but that the District demonstrated nondiscriminatory reasons for its failure to promote plaintiff from July 1984 to 1985. This led to the conclusion that "it is more likely than not likely that denial of plaintiff's promotion from 1982 to mid–1984 proximately resulted from a racially motivated policy to hold back some white promotions to Deputy Chief until the number of black

deputies equalled or exceeded the number of white deputies." *Palmer v. Barry*, Civ. Action No. 87–1304, Mem. Op. at 6, 1988 WL 104951 (D.D.C. September 30, 1988). A subsequent Order, filed November 3, 1988, awarded plaintiff back pay from December 1983[1] and an adjustment in retirement benefits from September 1982 to his retirement on August 30, 1985.

In November the District filed a motion for reconsideration, arguing that plaintiff had not filed a timely EEOC complaint. The District argued that because the discrimination against plaintiff ceased in mid–1984, his EEOC complaint, filed in early December of 1985, was untimely under 42 U.S.C. § 2000e–5(e). A second Memorandum and Order dated November 18, 1988 rejected the District's timeliness claim, concluding that plaintiff's "allegations of discrimination after mid–1984 were [not] unconnected with his allegations of discrimination before that time." *Palmer v. Barry*, Civ. Action No. 87–1304, slip op. at 2, 1988 WL 129829 (D.D.C. Nov. 18, 1988).

On appeal, the District raised only the narrow issue of timeliness, rejected in the November 18, 1988 Memorandum and Order. *See Palmer v. Barry*, 894 F.2d 449, 453 (D.C.Cir.1990). The District did not challenge on appeal any of the findings of fact, and in fact, did not even place the trial record before the Court of Appeals. Moreover, the District did not challenge the scope of the remedy awarded plaintiff. Unable to determine from the September and November Memoranda whether the District's discriminatory treatment of plaintiff extended beyond mid–1984, the Court of Appeals remanded the case for clarification of this issue. The Court of Appeals directed that:

> On remand, the District Court must make specific findings as to whether the District discriminated against Palmer after mid–1984, applying the principles of either *Burdine* and *McDonnell Douglas* or *Price Waterhouse*. If there was such

discrimination, then it would appear that Palmer's complaint was timely filed. *Id.*

On remand, a July 13, 1991 Memorandum found that (1) the District had articulated a sufficient nondiscriminatory reason under *Price Waterhouse* for not promoting plaintiff from mid–1984 through August 22, 1985, and therefore that no actionable act of discrimination occurred during that period, but that, (2) the District had discriminated against plaintiff from August 22, 1985 until he retired on August 30, 1985. Regarding this latter period, the Memorandum concluded:

> Plaintiff[ ] presented convincing evidence that Coleman observed the Mayor's policy of equalizing black and white promotions in the Department after mid–1984 and through 1985. It may reasonably be inferred that Coleman did not provide Palmer with a date and time or documentation because he was clinging to the earlier policy: when push came to shove, Coleman was reluctant to promote Palmer without promoting a black in tandem out of deference to the Mayor's earlier policy.

*Palmer v. Barry*, No. 87–1304, Mem. Op. at 8, 1991 WL 148560 (D.D.C. July 13, 1991). Although the Memorandum found that the District had discriminated against plaintiff within the 300 days preceding the filing of the EEOC complaint, it restricted plaintiff's recovery to the nine days immediately preceding the filing of the complaint (August 22, 1985 to August 30, 1985). The Memorandum directed plaintiff to file a proposed Order implementing the July 13, 1991 decision.

Further consideration confirms that the District discriminated against plaintiff from August 22, 1985 to August 30, 1985, but that the reduction of plaintiff's recovery to nine days back pay was erroneous.

The governing elementary principle is "that where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second

---

**1.** Back pay was only awarded from December 1983 because Title VII restricted plaintiff's recovery for back pay to two years before the

EEOC charge was filed. *See* 42 U.S.C. § 2000e–5(g); *McKenzie v. Sawyer*, 684 F.2d 62 (D.C.Cir. 1982).

appeal." *Laffey v. Northwest Airlines,* 740 F.2d 1071, 1089–90 (D.C.Cir.1984). As a corollary, a district court cannot reconsider, on remand, decisions made at an earlier stage of the litigation and not raised on appeal:

> Under the law of the case doctrine, a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.

*Williamsburg Wax Museum v. Historic Figures, Inc.,* 810 F.2d 243, 250 (D.C.Cir. 1987).

Here, the only issue open for consideration on remand is whether plaintiff proved that any discriminatory act against him occurred within the 300–day period preceding the filing of his charge with the EEOC. Since, on remand, it is reaffirmed that plaintiff suffered discrimination between August 22 and August 30, 1985 and thus within the statutory limitations period, his complaint was timely filed. All other aspects of the September and November 1988 unappealed district court findings and conclusions were binding and final at that time. Therefore, the status of *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), either before or after the enactment of the Civil Rights Act of 1991, is irrelevant. Accordingly, the law of the case requires an award to plaintiff of the full measure of relief as determined in the November 3, 1988 Order.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 7th day of July, 1992, hereby

ORDERED: that judgment be entered in favor of plaintiff against defendants for the following amounts:

1. Back pay in the amount of $9,495.00;

2. Pay for unused leave in the amount of $1,286.00;

3. Pre-judgment interest in the amount of $2,059.00 (calculated at 6% per annum);

4. Post-judgment interest on the foregoing amounts, calculated at 8.15% per annum,[2] commencing with the entry of the November 3, 1988 judgment; and it is further

ORDERED: that defendants make or cause to be made whatever adjustment in plaintiff's retirement annuity is necessary to place plaintiff in the position he would have been in had he been promoted to the rank of Deputy Fire Chief in 1982, and had he received a DFC/step 2 salary from September 1, 1984 to September 1, 1985; and it is further

ORDERED: that defendants pay plaintiff a retroactive annuity adjustment equal to the difference between the annuity payments he has actually received since September 1, 1985 and the amounts he would have received had the annuity adjustment required by this Judgment been made on September 1, 1985, together with interest on that amount, calculated at 6% per annum through November 3, 1988, and calculated at 8.15% thereafter until paid; and it is further

ORDERED: that plaintiff is awarded, pursuant to 42 U.S.C. § 2000e–5(k), his reasonable attorneys' fees and costs incurred in defending against defendants' appeal of the November, 1988 decision and in prosecuting his case on remand. Pursuant to Rule 215 of the Rules of this Court, the parties are directed to confer and reach an agreement on all fee issues. On *September 18, 1992 at 9:00 a.m.* counsel and the parties will appear for a status conference at which the Court will (1) determine whether settlement of any or all aspects of the fee matter has been reached, (2) enter judgment for any fee or cost on which agreement has been reached, (3) establish an appropriate schedule for the litigation of any remaining fee issues, and (4) make

---

**2.** This is the statutory post-judgment interest rate for the month of November, 1988, pursuant to 28 U.S.C. § 1961.

such other determinations as are appropriate under Rule 215.

## OPINION ON REMAND

### I.

This matter is before the Court on remand from the Court of Appeals for the limited purpose of making "specific findings as to whether the District of Columbia discriminated against Palmer after mid-1984, applying the principles of either *Burdine* and *McDonnell Douglas* or *Price Waterhouse.*" *Palmer v. Barry,* 894 F.2d 449, 453 (D.C.Cir.1990). The Court of Appeals further directed, if on remand the Court found no violation of Title VII during the period in question, that the Court consider whether plaintiff's complaint was time barred. *Id.* at 453–454. On remand, the parties presented oral argument and filed supplemental briefs and proposed supplemental findings of fact.

This Court previously found that defendants implemented a policy of equalizing high level black and white promotions within the Fire Department without establishing an affirmative action plan justified by prior discrimination and that, as a result of such policy, defendants discriminated against plaintiff by not promoting him from 1982 until 1985 when he retired. *See Palmer v. Barry,* Slip Op., Civ. No. 87-1304, 1988 WL 104951 (September 30, 1988). The Court also found that defendants demonstrated non-discriminatory reasons for the failure to promote plaintiff from mid–1984 to 1985 but that defendants offered no evidence that the pre-existing discriminatory policy was abandoned during that time. *Id.,* Slip Op. at 3 & 5.

Subsequent to that ruling, the Supreme Court announced its decision in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *Price Waterhouse* supplements the standards and burden of proof established by *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) in cases arising under Title VII involving mixed discriminatory and non-discriminatory motives. Where both discriminatory and non-discriminatory factors play a role in an employer's decision, the Court stated that "an employer shall not be liable if it can prove that, even if it had not taken [the discriminatory factor] into account, it would have come to the same decision regarding a particular person." *Price Waterhouse,* 109 S.Ct. at 1786 & 1787 n. 9. From mid–1984 to 1985 when plaintiff retired, *Price Waterhouse,* rather than *McDonnell Douglas* and *Burdine,* applies to this action. Defendants thus have the burden of proving by a preponderance of the evidence that, from mid–1984 onwards, even in the absence of the Mayor's policy, they would not have promoted plaintiff. *See Price Waterhouse,* 109 S.Ct. at 1792.

### II.

## SUPPLEMENTAL FINDINGS OF FACT

1. In the 1980's, Mayor Marion Barry directed that promotions in the Fire Department, including promotions to Deputy Fire Chief, should be equalized, i.e., for every qualified white person promoted to such a position, a qualified black person should also be promoted. Elijah Rogers, then City Administrator, concurred in the Mayor's directive.

2. Promotions in the Fire Department at the level of Deputy Fire Chief were recommended by the Fire Chief and required the approval of the City Administrator.

3. Gary Palmer was a white Battalion Chief and headed the Fire Department Communications Division from 1980 to 1985. Palmer's job performance was "exemplary." Transcript of Trial Proceedings (April 6, 1988) (testimony of Fire Chief Theodore Coleman) ("Coleman Tr.") at 50. Palmer's technical expertise and mastery of the communications functions was invaluable to the Fire Department. The Fire Department did not have someone with the same expertise who could replace Palmer. Transcript of Trial Proceedings (April 6, 1988) ("April 6 Tr.") at 27.

4. In mid–1982, Fire Chief Theodore R. Coleman determined that he wanted to promote Palmer to Deputy Fire Chief. Coleman recommended Palmer for promotion in 1982 and again in early 1983 but Palmer's promotion was not approved by City Administrator Rogers pursuant to the Mayor's policy of equalizing black and white promotions. Coleman knew of and conformed to the Mayor's policy as applied to his recommendation for Palmer's promotion in 1982 and 1983. Transcript of Trial Proceedings (April 5, 1988) ("April 5 Tr.") at 88 (testimony of Deputy Fire Chief Michael C. Tippett) & 104 (testimony of Fire Department Administrator Edward D. Eberhard).

5. Between 1982 and 1985, Palmer and Coleman had ten or twenty meetings on other subjects in which the topic of Palmer's promotion was raised by one or the other of them. At those meetings, Coleman cited budgetary concerns, a hiring freeze, and the need to await a vacancy at Palmer's level or above as reasons for the delay in his promotion. *See* April 5 Tr. at 14–20. However, it is more likely than not likely that in late 1983 and early 1984, Coleman, at the direction of Mayor Barry and Rogers and pursuant to the publicized policy, did not want to promote Palmer because he was waiting for two vacancies for Deputy Fire Chief to become open so that he could recommend a black, most likely Bernard Johnson, for promotion to that position along with Palmer. *See* April 5 Tr. at 19, 28, 77, 88, & 104.

6. Prior to mid–1984, Palmer was aware or should have been aware of the Mayor's policy and knew or should have known that that policy affected his own promotion due to his knowledge that the promotion was being withheld pending promotion of Johnson, *see* April 5 Tr. at 28, and in addition due to the highly publicized nature of the Mayor's policy to equalize promotions, the meeting or meetings attended by Fire Department Chiefs including Battalion Chiefs at which that policy was discussed, and the publicity surrounding numerous lawsuits brought in the early 1980's by both black and white firefighters and chiefs alleging discrimination in the Fire Department.

*See, e.g., Dougherty v. Barry,* 869 F.2d 605 (D.C.Cir.1989); *Hammon v. Barry,* 813 F.2d 412 (D.C.Cir.1987); *Bishopp v. District of Columbia,* 788 F.2d 781 (D.C.Cir. 1986).

7. City Administrator Thomas Downs replaced Rogers in mid–1983. Coleman recommended Palmer's promotion to Downs several times during 1984 and 1985. Downs did not approve Palmer's promotion because he felt there were "too many chiefs" in the Fire Department and he was concerned that Coleman was trying to solve personality problems by creating rank. April 6 Tr. at 26.

8. Downs did not approve any promotions to the position of Deputy Fire Chief between July 24, 1983 and December 3, 1985.

9. In January, 1985, two vacancies for Deputy Fire Chief became available. At that time, Coleman told Palmer his promotion would be almost immediate. April 5 Tr. at 32–33.

10. On August 5, 1985, Palmer submitted his retirement papers. Shortly thereafter, Coleman met with Palmer to ask him what could be done to convince him not to retire. Palmer replied that he wanted specifically to be promoted, that he wanted a date and a time, and that he thought he was entitled to back pay. Coleman responded that he would have to talk to Downs.

11. Coleman had urged Downs to approve Palmer's promotion at regular meetings between the two for several months prior to August, 1985. Downs ultimately relented and told Coleman that Coleman's promotion was authorized, without back pay. April 6 Tr. at 28 & 31–32. Coleman discussed Palmer's impending retirement and promotion at a meeting with Downs on August 22, 1985. *See* Coleman's Memorandum for the Record, dated August 30, 1985 ("Coleman April 30 Memorandum"), Exhibit E to Plaintiff's Proposed Supplemental Post–Trial Findings of Fact and Conclusions of Law (filed June 25, 1990). It is more likely than not likely that Downs first decided to authorize Coleman's promotion

at the August 22 meeting. *See, e.g., id.;* April 6 Tr. at 29; April 5 Tr. at 40–44. Downs limited the authorization to Palmer only. He did not authorize the creation of a new position in the division. Downs also specifically conditioned the authorization for Palmer's promotion upon his formal commitment to serve in the Fire Department for 18 or 24 months after his promotion. *Id.* at 28.

12. On August 23, 1985, Coleman informed Palmer that he had spoken with Downs and that Downs had agreed to promote Palmer. Coleman did not relay Downs' request for a commitment to serve in the Department for an additional 18 or 24 months. Palmer asked Coleman for a date and a time for his promotion. Coleman responded that he could not give him a date and time. April 5 Tr. at 43. Memorializing that conversation, Coleman wrote that he told Palmer that the promotion "could possibly be handled" but that back pay "could not be promised." Coleman April 30 Memorandum. However, Palmer's testimony, as well as Coleman's, indicates that Palmer was informed that his promotion had been authorized but was given no documentation or other proof that it would be forthcoming. April 5 Tr. at 42; Coleman Tr. at 54.

13. On August 30, 1985, Palmer retired, believing that his prospects for promotion were hopeless. Had Coleman given him a date and time, or some documentation regarding the promotion, he would not have retired. April 5 Tr. at 44–45.

14. On September 11, Carl Archer, a black Battalion Chief, was promoted to Acting Deputy Fire Chief of the Communications Division. On December 3, 1985, Archer was promoted to Deputy Fire Chief along with five other Battalion Chiefs. It is more likely than not likely that, had Palmer not retired, Palmer would have been promoted on December 3, 1985 instead of Archer.

### III.

Prior to mid–1984, defendants did not promote plaintiff because of the Mayor's policy of equalizing black and white promotions in the Fire Department. That policy continued through 1985, but after mid–1984, defendants also did not promote plaintiff for non-discriminatory reasons. Downs' credible testimony that he did not authorize Palmer's promotion because of concerns about the creation of rank is corroborated by the fact that defendants did not promote any Battalion Chief to Deputy Fire Chief from mid–1983 until the end of 1985. Prior to the time when Downs authorized Palmer's promotion, the District therefore demonstrated that had there been no discrimination Palmer still would not have been promoted for non-discriminatory reasons—because Downs felt Coleman wanted to solve personality problems by creating rank. During that time, *Price Waterhouse* precludes liability by the District for its discriminatory policies. Furthermore, since Palmer knew or should have known of the District's discriminatory policies before the advent of Downs' non-discriminatory reasons for withholding authorization for his promotion, no "discovery rule" tolling the applicable 300–day statute of limitations applies to the earlier period during which the District failed to promote Palmer for solely discriminatory reasons.

Downs, however, ultimately authorized Palmer's promotion. The promotion was never effected because Coleman did not offer Palmer tangible verification of it, such as a date or time, or documentation. Palmer therefore had no reason to believe the promise was any more reliable than the numerous promises he had received previously. *Price Waterhouse* imposes upon the District the burden of proving by a preponderance of the evidence that Coleman was not authorized to give Palmer a date for his promotion. The District has conspicuously failed to prove a lack of authorization or to offer any evidence of why Coleman equivocated following Downs' decision. Plaintiffs presented convincing evidence that Coleman observed the Mayor's policy of equalizing black and white promotions in the Department after mid–1984 and through 1985. It may be reasonably inferred that Coleman did not provide Palmer with a date and time or documenta-

tion because he was clinging to the earlier policy: when push came to shove, Coleman was reluctant to promote Palmer without promoting a black in tandem out of deference to the Mayor's earlier policy.

Accordingly, Palmer's recovery is limited to the period of time when Coleman equivocated and failed to fully communicate Downs' decision to him, following Downs' authorization of his promotion and until his retirement. That period of time is nine days—August 22 to August 30, 1985. Plaintiffs shall on or before August 5, 1991 submit a proposed order implementing this decision on remand.