**Gary L. PALMER, Appellee,**

v.

**Sharon Pratt KELLY, Mayor, et al., Appellants.**

**Nos. 92–7170, 93–7035.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 10, 1994.

Decided March 18, 1994.

Michael F. Wasserman, Sp. Asst. Corp. Counsel, Washington, DC, argued the cause, for appellants. With him on the brief were John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel. Edward E. Schwab entered an appearance.

Denis F. Gordon, Washington, DC, argued the cause, for appellee. With him on the

brief were Frank Petramalo, Jr. and Susan J. Pannell.

Before SILBERMAN, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellee, Gary Palmer, who was a Battalion Chief and Director of the Communications Division of the District of Columbia Fire Department, claims that from 1982 through his retirement in August of 1985, high-ranking officials of the District of Columbia unlawfully discriminated against him by failing to promote him to Deputy Fire Chief. Palmer, who is white, charges that this discrimination arose from a policy instituted by then-Mayor Marion Barry to equalize the number of blacks and whites promoted to high level positions within the Fire Department—a policy implemented without adoption of a formal affirmative action plan.

In August of 1982, then-acting Fire Chief Theodore R. Coleman announced the creation of a new position of Deputy Chief of the Communications Division of the Fire Department. Coleman told Palmer that he would recommend that Palmer be promoted to this position. However, Coleman never recommended Palmer's promotion, "even though Coleman believed that Palmer was performing the Director's job in an exemplary fashion." *Palmer v. Barry*, 894 F.2d 449, 451 (D.C.Cir.1990) (*"Palmer III"*). Shortly after Palmer announced his retirement on August 30, 1985, Fire Chief Coleman appointed Carl Archer, a black Battalion Chief from another division, to be Deputy Chief of the Communications Division.

I. PRIOR PROCEEDINGS

A. *The Initial Trial—Palmer I*

Palmer filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 9, 1985 and filed suit in federal district court on May 14, 1987. After a bench trial, the district court found that the District had unlawfully discriminated against Palmer because of his

race and awarded him back pay plus interest and enhanced retirement benefits for the period between 1982 and his retirement in August, 1985. *Palmer v. Barry*, 1988 WL 104951, 1988 U.S. Dist. LEXIS 17343, Civ. Action No. 87–1304 (D.D.C. Sept. 30, 1988) ("*Palmer I*"). The court found that

> the stipulated facts were sufficient to make out a case that someone caused Chief Coleman to withhold Palmer's promotion, despite his qualifications therefor, in order to fill the higher position with a black; that this *prima facie* case was confirmed by evidence at trial; and that the District of Columbia had a race-conscious promotions policy between 1982 and 1985, pursuant to which the District sought to achieve racial balance among Deputy Chiefs.

*Palmer III*, 894 F.2d at 451 (citing *Palmer I*, slip op. at 3–5). However, part of the opinion suggested that the District may have discriminated against Palmer only between 1982 and mid–1984. The trial court found that

> [d]efendants have adduced evidence of nondiscriminatory reasons for their failure to promote plaintiff after mid–1984, i.e., ... budgetary concerns, i.e., that the Fire Department was becoming top heavy with Deputy Chiefs. Moreover, in 1985, [Deputy City Administrator] Downs reversed himself and conditionally acceded to Coleman's recommendation [to promote Palmer].... Downs conditioned his approval upon a commitment from plaintiff that, if promoted, he would remain on duty for 18 to 24 months. As a result of a breakdown of communications between Downs, Chief Coleman and the plaintiff, plaintiff resigned without knowing that Downs had conditionally approved plaintiff's promotion....

*Id.* at 451–52 (quoting *Palmer I*, slip op. at 5).

### B. *The District's Post–Trial Motion— Palmer II*

After the district court's decision in *Palmer I*, the District filed a post-trial motion for modification of the judgment, arguing that if the discrimination against Palmer ceased in mid–1984, then Palmer's EEOC complaint, filed on December 9, 1985, was outside the 300–day limitations period established by 42 U.S.C. § 2000e–5(e) (1988). The district court denied the motion. The court explained that, although it had determined in its first order "that defendants ha[d] adduced evidence of nondiscriminatory reasons for their failure to promote [Palmer] after mid–1984, the court did *not* find that [Palmer's] allegations of discrimination after mid–1984 were unconnected with his allegations of discrimination before that time." *Palmer v. Barry*, 1988 WL 129829, 1988 U.S. Dist. LEXIS 17345, Civ. Action No. 87–1304, slip op. at 2 (D.D.C. Nov. 18, 1988) ("*Palmer II*") (emphasis added). The district court then reiterated its finding from *Palmer I* that "someone caused the Fire Chief to keep [Palmer] out of the new position until he retired so that the position could be given to his black successor." *Id.* Thus, the court held that Palmer's complaint was timely filed.

### C. *The District's Appeal to the D.C. Circuit—Palmer III*

On appeal to this Court, the District raised only the timeliness issue that it had raised in its post-trial motion. This Court, however, found the district court's factual findings so ambiguous that it was "at a loss to assess the merits of the appellants' appeal." *Palmer III*, 894 F.2d at 453. We explained that

> [o]n the one hand, the District Court's judgment in *Palmer I* suggests that between 1982 and mid–1984 the District discriminated against Palmer in failing to promote him, but that after mid–1984 the District acted toward Palmer pursuant to legitimate business reasons. If so ... his complaint must be rejected as untimely. However, *Palmer I* and *Palmer II* also suggest that the District's discriminatory treatment of Palmer may have extended beyond mid–1984. *See, e.g., Palmer I* (District offered no evidence that "policy" of making race a "factor in Fire Department promotions" had changed); *id.* (Mayor's policy goal was achieved "in part ... by leaving the Communications Division without a Deputy Chief until after plaintiff retired and was replaced"); *Palmer II* (Palmer's allegations of discrimina-

tion after mid–1984 not found "unconnected" with his allegations of discrimination before that time).
*Palmer III*, 894 F.2d at 453 (internal citations omitted).

Because we could not discern the facts from the district court's holding, we remanded the case to the district court with instructions to "make specific findings as to whether the District discriminated against Palmer after mid–1984.... If there was such discrimination, then it would appear that Palmer's complaint was timely filed." *Palmer III*, 894 F.2d at 453.

#### D. Remand to the District Court—Palmer IV and Palmer V

On remand, the district court explained that

> [p]rior to mid–1984, defendants did not promote plaintiff because of the Mayor's policy of equalizing black and white promotions in the Fire Department. That policy continued through 1985, but after mid–1984, defendants also did not promote plaintiff for non-discriminatory reasons.... Prior to the time when Downs authorized Palmer's promotion, the District therefore demonstrated that had there been no discrimination Palmer still would not have been promoted for non-discriminatory reasons.... During that time, *Price Waterhouse* precludes liability by the District for its discriminatory policies.

*Palmer v. Barry*, 794 F.Supp. 5, 10 (D.D.C. 1991) ("*Palmer IV*").

However, the court also concluded that, after the city had lifted its blanket ban on new promotions and City Administrator Downs had actually authorized Palmer's promotion, Chief Coleman failed to communicate this offer adequately to Palmer. *Id.* The district court found that Palmer had presented "convincing evidence that Coleman observed the Mayor's policy of equalizing black and white promotions in the Department after mid–1984 and through 1985." *Id.* Thus, the court "reasonably inferred that Coleman did not provide Palmer with a date and time or documentation because he was clinging to the earlier policy: when push came to shove,

Coleman was reluctant to promote Palmer without promoting a black in tandem out of deference to the Mayor's earlier policy." *Id.* at 10–11.

The district court also reexamined the remedy it had awarded in *Palmer I*. Reasoning that, under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the only compensable discrimination occurred during the period when Coleman failed fully to communicate Downs's offer of promotion to Palmer—that is, the nine days between August 22 and August 30, 1985—the court reduced its prior award of back pay and adjusted retirement benefits from 1982 until August, 1985 to back pay and benefits for those nine days alone. *Palmer IV*, 794 F.Supp. at 10–11.

However, in a subsequent order, the district court corrected its limitation of plaintiff's award. *Palmer v. Kelly*, 794 F.Supp. 5 (1992) ("*Palmer V*"). Because the District did not challenge the propriety of the remedy in its first appeal to this Court, but instead limited its appeal to the narrow issue of timeliness, the district court held that the only issue properly before that court on remand was whether the plaintiff had proved an act of discrimination during the 300–day limitations period. *Palmer V*, 794 F.Supp. at 7 (citing *Williamsburg Wax Museum v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C.Cir.1987) (district court cannot consider on remand decisions made at earlier stage of litigation and not raised on appeal)). The court therefore determined that the "law of the case requires an award to plaintiff of the full measure of relief as determined in the November 3, 1988 Order." *Id.* 794 F.Supp. at 7.

The District again appeals the district court's decision.

### II. Discussion

#### A. Propriety of the District Court's Order on Remand

■ The District argues that we should overturn the district court's decision because the court made impermissible factual findings on remand that exceeded this Court's

mandate. The District contends that this Court directed the district court only to resolve ambiguities in its factual findings, but that the district court instead altered its prior unambiguous findings and rested its judgment solely on these new facts.

The District bases this charge on its claim that the district court's first order (*Palmer I*) had unambiguously absolved Fire Chief Coleman of any wrongdoing. In its first order, the district court found that "[a]s a result of a *breakdown of communications* between Downs, Chief Coleman and the plaintiff, plaintiff resigned without knowing that Downs had conditionally approved plaintiff's promotion if he would agree to serve for 18 to 24 months." *Palmer I*, slip op. at 5 (emphasis added). Because the District claims that the term "breakdown" does not imply fault or culpability, the District argues that the court clearly vindicated Chief Coleman in its first order and could not hold on remand that Coleman had discriminated against Palmer by withholding his promotion.

We do not agree that Chief Coleman's role in furthering the District's discriminatory treatment of Palmer was "unambiguously" resolved by *Palmer I*. In fact, it was this Court's inability to discern the district court's true findings regarding Chief Coleman's conduct that caused the Court to remand the case for further proceedings. We remanded because we could not reconcile the district court's findings that "someone caused Chief Coleman to withhold Palmer's promotion ... in order to fill the higher position with a black" and that the "District of Columbia had a race-conscious promotions policy between 1982 and 1985," with the court's additional finding that the District had "adduced evidence of nondiscriminatory reasons for [its] failure to promote plaintiff after mid–1984." *Palmer III*, 894 F.2d at 451 (quoting *Palmer I*, slip op. at 5).

On remand, the district court clarified Coleman's role. The court concluded that Palmer had "presented convincing evidence that Coleman observed the Mayor's policy of equalizing black and white promotions in the Department after mid–1984 and through 1985." *Palmer IV*, 794 F.Supp. at 10. Thus, the Court "reasonably inferred that Coleman

did not provide Palmer with a date and time or documentation [of his promotion] because he was clinging to the earlier policy: when push came to shove, Coleman was reluctant to promote Palmer out of deference to the Mayor's earlier policy." *Id.* at 10–11. Thus, the district court resolved the ambiguity in its prior opinion and fulfilled this Court's mandate to "make specific findings as to whether the District discriminated against Palmer after mid–1984." *Palmer III*, 894 F.2d at 453. The District's claim that the trial court exceeded its mandate therefore fails.

## B. *The Remedy*

■ The District next argues that, even if Chief Coleman discriminated against Palmer after mid–1984, Palmer's remedy should be limited to the nine days between Chief Coleman's failed communication and Palmer's retirement. The District previously argued this point before the district court in its motion for modification of the judgment. The district court originally accepted that argument and ordered relief accordingly. *Palmer IV*, 794 F.Supp. at 10–11. However, after "further consideration" the court reversed this decision, finding that under this Court's decision in *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243 (D.C.Cir.1987), the District's failure to appeal the remedy awarded by the trial court in its first appeal precluded the district court from altering its judgment on remand. *Palmer V*, 794 F.Supp. at 7 (1992). The District now charges that the district court's application of the "law of the case" doctrine was in error.

In *Williamsburg Wax*, this Court held that a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time. 810 F.2d at 250. The parties agree that Palmer may be afforded a remedy for the entire period from 1982 through his retirement in 1985 only if the District's undisputed discrimination against Palmer from 1982 to

mid–1984 combined with Coleman's discriminatory act of failing to communicate the promotion offer in August 1985 to form a "continuing violation." *See Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d 1395, 1422 (D.C.Cir.1988) (to recover for violations occurring outside limitations period, plaintiff must prove either "series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period.") (quoting *Milton v. Weinberger,* 645 F.2d 1070, 1074–75 (D.C.Cir. 1981)).

Palmer argues that the district court had clearly ruled that Palmer had proven a continuing violation before the District's first appeal and that under the law of the case doctrine, the District's failure to appeal that determination bars the District from raising that issue now. The District counters that the law of the case cannot bar it from challenging the propriety of the remedy awarded Palmer because the district court never clearly found a continuing violation prior to its first appeal. The District argues that "[t]his legal issue was not decided earlier in the litigation because the district court found in the first instance that the miscommunication of Down's offer was the result of 'breakdown of communications' among Downs, Coleman and Palmer." Appellant's Br. at 13. Thus, the District argues, the "court did *not* find that the miscommunication was the result of discrimination." *Id.* Accordingly, the district court never decided that there was any continuing violation and the District, obviously, could not have appealed that decision. We disagree.

Any fair reading of the district court's Order Denying the District's Motion for Modification of the Judgment (*Palmer II*) demonstrates that the award of full back pay for Palmer rested on a continuing violation theory. That order paraphrased the District's complaint as follows:

> Defendants contend that since the court found that defendants adduced evidence of nondiscriminatory reasons for their failure to promote plaintiff after mid–1984, there was no *continuing discrimination* which occurred during the 300 day period prior to plaintiff's filing of his EEOC complaint on December 9, 1985. Defendants argue that therefore plaintiff's EEOC complaint was untimely, and plaintiff's Title VII suit is barred.

*Palmer II,* slip op. at 1 (emphasis added). This alone serves to show that the District understood the district court's first order (*Palmer I*) to rest on a continuing violation theory of discrimination. If this were not sufficient, however, the district court's order went on to defend its finding of a continuing violation:

> [W]hile this court found that defendants have adduced evidence of nondiscriminatory reasons for their failure to promote plaintiff after mid–1984, *the court did not find that plaintiff's allegations of discrimination after mid–1984 were unconnected with his allegations of discrimination before that time.* In fact, this court found that the evidence at trial *confirmed* plaintiff's *prima facie* showing that "someone caused the Fire Chief to keep the fully qualified white plaintiff out of the new position *until he retired* so that the position could be given to his black successor."

*Palmer II,* slip op. at 2 (quoting *Palmer I*) (emphasis added). The court's order fairly demonstrates that its holding rested upon a continuing violation theory of liability. The District appealed only on timeliness grounds, arguing that the district court's factual findings were not sufficient to support the court's conclusion that Mr. Palmer had suffered *any* discrimination after mid–1984. If this were true, of course, the District would have won its claim of timeliness, since Palmer's claim would not have been filed with the EEOC within 300 days of the last act of discrimination as required by statute. *See* 42 U.S.C. § 2000e–5(e) (1988).

The District did *not* argue the alternative theory that it now presses before this Court: that even if Palmer were the victim of discrimination after mid–1984, that discrimination was not sufficiently connected to the pre–1984 discrimination to constitute a continuing violation; and that Palmer should therefore be compensated only for the post–1984 discrimination. Thus, the District waived its claim that it should be liable for

only nine days' back pay by failing to press this argument earlier. Its failure to appeal on alternative grounds cannot now be corrected.

Furthermore, even if the law of the case doctrine did not bar the District from raising its damages argument, Palmer would still be entitled to the full remedy awarded by the district court because the trial court's factual findings fully support its finding of a continuing violation of Title VII. In order to recover based on a theory of continuing violations, a plaintiff must prove either a "series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period." *Berger,* 843 F.2d at 1422. Challenges to discriminatory promotion policies "are typical of those falling within the ambit of the continuing-violation principle." *Shehadeh v. Chesapeake & Potomac Tel. Co.,* 595 F.2d 711, 724 (D.C.Cir.1978).

The first question in the analysis of a continuing violations claim is whether an actual violation of Title VII occurred during the statutory period. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) ("[T]he emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists."). On remand, the district court expressly found that Coleman's failure to inform Palmer of his promotion in August 1985 violated Title VII. *See Palmer IV,* 794 F.Supp. at 10. Thus, there was an actual violation within the limitations period.

The next question is whether this discriminatory act either was part of a series of related discriminatory acts or was caused by a discriminatory system in effect both before and during the limitations period. *See Berger,* 843 F.2d at 1422. On several occasions the district court found that Coleman's action was part of an unremitting policy of discrimination against whites that was instituted by Mayor Barry and continued through Palmer's retirement in 1985. For example, in *Palmer I,* the court found that "the Mayor's policy favored the promotion of black officers and the Chief recognized that it was his responsibility to carry out the Mayor's poli-

cy." *Palmer I,* slip op. at 4. The court summarized the effect of the Mayor's policy as follows:

> [A]s a result of the Mayor's policy as implemented by Chief Coleman, where in 1983 there had been five white Deputy Chiefs and two black Deputy Chiefs, after the creation of new deputy positions in December 1985 following the plaintiff's retirement, there were six black Deputy Chiefs and four white Deputy Chiefs. *This was accomplished, in part, by leaving the Communications Division without a Deputy Chief until after plaintiff retired* and was replaced by Deputy Chief Archer.

*Id.* at 4–5 (emphasis added). This statement by the court clearly indicates that Palmer's nonpromotion was the result of the Mayor's continuing discriminatory policy.

Then, in its Motion for Modification of the Judgment, the District challenged "the court's statement that defendants ha[d] offered no evidence that the Mayor's policy of making race a factor in Fire Department promotions ha[d] changed [since mid–1984]." *Palmer II,* slip op. at 2. But the trial court reaffirmed its finding that the District's "evidence [did] not suffice to show a change in the Mayor's policy." *Id.* Furthermore, the court "found that the evidence at trial confirmed plaintiff's *prima facie* showing that 'someone caused the Fire Chief to keep the fully qualified white plaintiff out of the new position until he retired so that the position could be given to his black successor.' " *Id.*

Finally, on remand, the court repeated its earlier assertion that "the Mayor's policy of equalizing black and white promotions in the [Fire] Department ... continued through 1985...." *Palmer IV,* 794 F.Supp. at 10. These repeated and consistent findings by the trial court are sufficient to support the court's judgment that Coleman's failure to inform Palmer of his promotion was the result of a discriminatory policy that continued through Palmer's retirement in 1985. Thus, Palmer has proven a continuing violation and is entitled to the full remedy awarded by the trial court.

## C. *Attorneys' Fees*

The district court awarded Palmer $131,-346.50 in attorneys' fees and $10,902.47 in expenses. *Palmer v. Barry,* Civ. Action No. 87–1304 (Feb. 1, 1993) ("*Palmer VI*"). The District noticed an appeal from this decision, which was consolidated with its appeal on the merits. The District's only arguments regarding the propriety of the attorneys' fee award are contained in a footnote on the last page of its brief. These arguments are without merit and warrant no discussion here. The district court's judgment and award of attorneys' fees and costs is therefore

*Affirmed.*