In re Edward G. MASCOLL, Debtor.

Airlines Reporting Corporation,
Plaintiff,

v.

Edward G. Mascoll, Defendant.

Bankruptcy No. 95–00354.
Adversary No. 99–0057.

United States Bankruptcy Court,
District of Columbia.

March 14, 2000.

Kele Onyejekwe, Germantown, MD, for defendant.

Valerie P. Morrison, Gold, Morrison & Laughlin, P.C., Alexandria, VA, for plaintiff.

### DECISION RE PLAINTIFF'S MOTION FOR RECONSIDERATION

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The plaintiff, Airlines Reporting Corporation ("ARC"), commenced this adversary proceeding by filing a complaint seeking a determination that the debt owed to it by the defendant, Edward G. Mascoll, was of a nondischargeable character. The court granted Mascoll's motion for summary judgment, finding that Mascoll's obligations to ARC were discharged by the court's discharge order entered on July 21, 1995. ARC has moved the court to reconsider. Upon full consideration of the record, including evidence and argument at a hearing of February 23, 2000, the court will deny ARC's Motion For Reconsideration.

As discussed in part I, ARC's claim did not escape discharge pursuant to the parties' postpetition Repayment Agreement despite ARC's belief that the Repayment Agreement, by agreeing that the debt was nondischargeabe and placing an obligation on Mascoll so to affirm in his bankruptcy case, resolved all issues in that regard, thereby obviating the need for a dischargeability complaint. As discussed in part II, ARC's complaint is untimely despite ARC's assertions that the bar date ought not apply because of an equitable right to *nunc pro tunc* modification of the dis-

charge, equitable tolling, equitable estoppel, and waiver.

## I

ARC argues that questions regarding the nondischargeability of a specific debt may be resolved via a postpetition settlement agreement, in which the debtor stipulates to the nondischargeability of the debt. In this regard, ARC maintains that the Repayment Agreement executed by ARC and Mascoll, in which Mascoll acknowledged that his obligation to ARC was nondischargeable in his pending bankruptcy case, is enforceable and effectively renders Mascoll's debt to ARC nondischargeable. The postpetition agreement, in relevant part, provided that Mascoll would make certain payments on ARC's prepetition claim against him and acknowledged that:

> ARC's claim against you [Mascoll] is nondischargeable in bankruptcy, whether corporate or individual, as arising out of fraud and breach of fiduciary duty, and that you [Mascoll] affirm this obligation in your present bankruptcy action, entitled *In re Edward G. Mascoll,* No. 95–80354[sic] (D.C.Bankr.), and any other such action.

ARC contends that just like any other litigation where parties enter into a settlement agreement, once the Repayment Agreement was executed, all that was required to dispose of the dischargeability issue in the bankruptcy case, was to advise the court of the settlement. In fact, Robert W. Ludwig Jr., ARC's witness, testified at the hearing that there was no need to litigate in bankruptcy court a matter that had already been decided by the parties, for to do so would be to engage in nullities.

ARC maintains that it was through no fault of its own that the court was never informed of the Repayment Agreement, that it was Mascoll's obligation under the Repayment Agreement to inform the court of the agreement. Therefore, ARC argues that the court should approve the Repayment Agreement and enforce it as to Mascoll's obligations to ARC.

## A

ARC's argument does not acknowledge the plain workings of the Bankruptcy Code and demonstrates ARC's apparent failure to read the plain commands of the Code and the Federal Rules of Bankruptcy Procedure regarding the dischargeability of a Chapter 7 debtor's prepetition debts in bankruptcy. Sections 523, 524, and 727 of the Bankruptcy Code and Rule 4007(c) of the Federal Rules of Bankruptcy Procedure plainly provide the requirements that a creditor must satisfy in order to prevent the debts owed to it from being discharged.

■ When an individual defrauds another entity and then files a case under Chapter 7 of the Bankruptcy Code, the debt will be discharged by the debtor's discharge under 11 U.S.C. § 727(a) unless (with exceptions of no relevance here):

> 1) the debt can be enforced pursuant to a reaffirmation agreement under 11 U.S.C. § 524(c); or

> 2) the creditor files a complaint under 11 U.S.C. § 523(c) and F.R. Bankr.P. 7001 to determine that the debt is of a nondischargeable character under 11 U.S.C. § 523(a)(2)(A).

So when the debtor, Edward G. Mascoll, committed in a Repayment Agreement to affirm that his debt was nondischargeable, that could have been accomplished only via a reaffirmation agreement or via a court judgment pursuant to a § 523(c) complaint.

## B

■ The Repayment Agreement was not enforceable as a reaffirmation agreement for numerous reasons recited in the court's earlier decision granting Mascoll's Motion for Summary Judgment. As drafted, the Repayment Agreement runs contrary to a basic precept of the Bankruptcy Code, which is to provide the debtor a fresh financial start. "In enacting [the] reaffirmation rules [contained in § 524(c) ], Congress attempted to preserve the fresh start goal of the bankruptcy law...." *See*

*In re Gardner,* 57 B.R. 609, 611 (Bankr. D.Me.1986). Mascoll's acknowledgment that his obligation to ARC is nondischargeable and Mascoll's agreement to affirm such in his pending bankruptcy case does not dispose of the necessity of a valid reaffirmation agreement. As noted by *In re Catron,* 186 B.R. 194, 196 (Bankr. E.D.Va.1995) (quoting *In re Minor,* 115 B.R. 690, 695 (D.Colo.1990)):

> Section 524(c) articulates the requirements for a valid reaffirmation agreement "whether or not discharge of such debt is waived." 11 U.S.C. § 524(c). It is evident from the literal language of the statute that "Congress was greatly concerned that a debtor waiving dischargeability of a particular debt be afforded the procedural protections provided in § 524(c), regardless of any preexisting agreement as to dischargeability."

The Repayment Agreement is nothing more than an invalid reaffirmation agreement and an improper attempt to effectuate Mascoll's waiver of the bankruptcy discharge. If the court were to enforce the Repayment Agreement it would allow ARC to circumvent the substantive and procedural requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure regarding dischargeability of debts. Having decided to enter into an agreement with Mascoll and to forego filing a § 523(c) complaint, ARC should have executed a repayment agreement that complied with the *reaffirmation requirements of § 524(c).*

### C

The court rejects ARC's assertion that Mascoll was required to inform the court about the settlement and, in any event, would view such an obligation as having no meaningful effect.

The court finds that the Repayment Agreement did not place such an obligation on Mascoll. Mascoll testified at the February hearing that he was not told and nor did he understand that he was to inform the court of the agreement. The court finds Mascoll's testimony credible as there is no language in the Repayment Agreement that contradicts his testimony. The Repayment Agreement does not expressly require Mascoll to inform the court.[1] Nor, does the agreement specify a date by which Mascoll was to inform the court. Mascoll's agreement merely acknowledged that "you [Mascoll] affirm this obligation [the debt owed to ARC, which Mascoll agreed was nondischargeable] in your present bankruptcy action."

██ Under § 523(c), determinations of dischargeability are only made "on request of the creditor to whom such debt is owed." Based on the terms of the Repayment Agreement, Mascoll did not agree that he would initiate or file a § 523(c) complaint for ARC. The acknowledgment that "you [Mascoll] affirm this obligation" at most meant that Mascoll would not contest that his debt was of a nondischargeable character in his bankruptcy case (or that he would or did reaffirm the debt precisely because it would be declared nondischargeable were the matter litigated).

In any event, even if Mascoll or his attorneys had notified the court of the Repayment Agreement, it would not have prevented the discharge of Mascoll's debt to ARC. Again, ARC had only two methods to ensure that its debt would not be discharged, executing a valid reaffirmation agreement or filing a timely § 523(c) complaint. Informing the court of the Repayment Agreement would have been pointless because the Repayment Agreement did not qualify as a valid reaffirmation agreement and because there was no litigation pending regarding the dischargeability of the debt: Because ARC did not file a necessary adversary proceeding under § 523(c), there was no dischargeability

---

1. The court notes that ARC drafted the language requiring Mascoll to affirm the debt. ARC could have easily drafted clearer language obligating Mascoll to inform the court of the agreement.

issue before the court to be resolved by the settlement agreement. Accordingly, the Repayment Agreement was not enforceable on its own, either as a reaffirmation agreement or by reason of the alleged obligation to inform the court of the agreement. ARC's claim is discharged unless its complaint was timely, the issue next addressed.

## II

■ No timely complaint was filed under the deadline of F.R. Bankr.P. 4007(c) for filing a § 523(c) complaint. Nor can that deadline be enlarged, for a motion to extend the deadline must be filed "before the time has expired." F.R. Bankr.P. 4007(c).

Section 523(c) is plain and unambiguous in operation. With exceptions of no relevance here, it provides, in relevant part that:

(1) ... the debtor shall be discharged from a debt of a kind specified in paragraph (2) ... of subsection (a) of this section, unless, on request of the creditor to whom the debt is owed, ... the court determines such debt to be excepted from discharge under paragraph (2) ... of subsection (a) of this section.

And F.R. Bankr.P. 4007(c) is equally plain as to when such a request (via a complaint commencing an adversary proceeding under part VII of the Rules) must be filed. ARC attempts to avoid Rule 4007(c) by seeking *nunc pro tunc* modification of the discharge (part A below), by urging that Mascoll is estopped (part B below), and by urging that Mascoll waived the Rule 4007(c) bar date (part C below). These attempts must be rejected.

## A

■ ARC argues that the court can "modify the discharge *nunc pro tunc* ... to except the Debtor's obligations to ARC ...." (emphasis added). ARC Memorandum at 7. But the plain language of § 523(c) requires that the debt is discharged because ARC never requested a § 523(a)(2) determination until the deadline expired. No exception exists for the

creditor who fails to read the statute's plain command.

ARC could have protected itself by filing a timely motion to extend the Rule 4007(c) deadline:

(1) until Mascoll and ARC could prepare, execute, and file a reaffirmation agreement (thusly carrying out what ARC thought was a commitment by Mascoll to affirm that the debt would remain collectible as nondischargeable), and until that reaffirmation agreement could no longer be rescinded; or

(2) until ARC could prepare and file a § 523(c) complaint if Mascoll refused to execute or rescinded a reaffirmation agreement.

ARC neglected to protect itself. It is now too late to seek to enlarge the time to file a § 523(c) complaint by a procedural device—*nunc pro tunc* modification of the reach of the discharge—which plainly would violate the mandate that a motion to extend the deadline for filing a § 523(c) complaint be filed before the deadline expires.

## B

Asserting both equitable estoppel and equitable tolling, ARC next argues that Mascoll is estopped from objecting to ARC's § 523(c) complaint. ARC asserts that Rule 4007(c) is not a strict statute of limitations and that a court may extend the time for a creditor to file a dischargeability complaint when equity so requires. In this regard, ARC maintains that Mascoll acted with an intent to induce ARC into not filing a timely § 523(c) complaint and that Mascoll's failure to inform the court about the Repayment Agreement amounted to affirmative misconduct. ARC also maintains that in reliance on Mascoll's misleading conduct, it failed to file a timely nondischargeability complaint, gave Mascoll new consideration by not terminating Affordable Elegance, Mascoll's travel agency, and allowed Mascoll, through Affordable Elegance, to run up a $37,000.00 bill. ARC argues that based on these

facts, equity requires that the court extend its time to file a § 523(c) complaint.

■ Both equitable estoppel and equitable tolling operate to toll a limitations period, but have different criteria. *See Currier v. Radio Free Europe/Radio Liberty Inc.*, 159 F.3d 1363 (D.C.Cir.1998). Generally, as noted by *Currier*, 159 F.3d at 1367 (citations omitted):

> equitable tolling allows a plaintiff to avoid the bar of the limitations period if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim... [while] equitable estoppel in the statute of limitations context prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time.

Whether viewed as seeking equitable tolling or as seeking to hold Mascoll equitably estopped, ARC's argument fails. The court finds that, under the facts of this case, principles of equity do not compel the court to extend ARC's time to file a § 523(c) complaint. The court turns first to the equitable tolling issue.

### 1.

■ ARC's equitable tolling argument must be rejected because (a) ARC failed to exercise due diligence and (b) none of the other elements for equitable tolling are present here, particularly any misconduct on the part of Mascoll.

### (a)

■ As observed by *Washington v. Washington Metropolitan Area Transit Authority*, 160 F.3d 750, 753 (D.C.Cir. 1998) (citations omitted), "[t]he court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." In general, before equitably tolling a statute of limitations, courts examine whether a plaintiff has exercised due diligence in preserving its legal rights. Courts also consider any misconduct on the part of the defendant in misleading the plaintiff as to the filing requirements. The Supreme Court noted in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990):

> We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

In *Washington*, the plaintiff failed to comply with a clear statutory deadline for filing an employment discrimination claim with the Equal Employment Opportunity Commission. He had filed a claim internally with his employer, which had waited until after the statutory bar before rejecting his claim. Only then did the plaintiff file his claim with the EEOC. The plaintiff argued, however, that the time should be equitably tolled because his employer touted its internal procedure as the appropriate forum for resolving discrimination claims and, thereby, lulled him into presuming that he was meeting the requirements of the law. The Court of Appeals concluded that in filing his claim late with the EEOC, over one year after his demotion, the plaintiff failed to exercise due diligence. In addition, the Court of Appeals held that the plaintiff had shown no affirmative misconduct on the part of his employer.

■ In the instant case, ARC waited until four years after Mascoll's discharge to commence an adversary proceeding to seek a determination that the obligations owed to it by Mascoll were of a nondischargeable character. ARC relied on a Repayment Agreement which failed adequately to address what was a plain procedural command regarding the deadline for filing a dischargeability complaint. ARC's inattentiveness to the plain procedural

command cannot be construed as due diligence. Even if ARC's untimely filing of a § 523(c) complaint had been due to excusable neglect, the court would not be obliged to extend the time for ARC to file such a complaint. The court's equitable power to toll the statute of limitations does "not extend to what is at best a garden variety claim of excusable neglect." *Washington,* 160 F.3d at 753.

■ Further, the Federal Rules of Bankruptcy Procedure "have eliminated the discretion the courts previously possessed to grant a motion filed after the bar date for an extension based on excusable neglect." *Columbia First Fed. Sav. & Loan Assoc. v. Rae (In re Rae),* 115 B.R. 6, 8 (Bankr.D.D.C.1990) (citations omitted). In any event, it is questionable whether ARC's failure to act for four years after entry of the court's discharge order would even amount to excusable neglect.

(b)

■ Moreover, even if ARC had exercised due diligence, none of the predicates for equitable tolling apply here. As observed by *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988) (quoting *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam)), courts may properly toll a statute of limitations where:

> "a claimant has received inadequate notice, . . . where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, . . . where the court has led the plaintiff to believe that she had done everything required of her, . . . [or] where affirmative misconduct on the part of a defendant lulled plaintiff into inaction."

None of the circumstances set forth in *Mondy* are present in this case. ARC only relies on the alleged misconduct of Mascoll,[2] alleging that this misconduct lulled ARC into inaction. ARC raises three alleged instances of such misconduct.

First, ARC claims that Mascoll stipulated to the nondischargeability of the debt he owed ARC and made payments under the Repayment Agreement to keep ARC from terminating its agency relationship with Affordable Elegance and filing a § 523(c) complaint, and that when Affordable Elegance's business began to decline, Mascoll no longer had an incentive to make payments, and stopped making payments, only then asserting that collection of the debt was barred by the court's discharge order.

But despite execution of the Repayment Agreement, ARC was free to file a § 523(c) dischargeability complaint (or a motion to enlarge the time for doing so) by the bar date. Nothing Mascoll did can be construed as affirmative misconduct attempting to lull ARC into not preserving its right to file such a complaint. He simply executed the Repayment Agreement and made the initial payments required under it. ARC has not shown that Mascoll or his attorneys realized that the Repayment Agreement was not a valid reaffirmation agreement and that the claim would be discharged if ARC did not preserve its right to file a § 523(c) complaint. The scant evidence on this point is Mascoll's testimony that he was told by his attorneys that he would have an opportunity to rescind the agreement, thus suggesting that they viewed the Repayment Agreement to be a valid reaffirmation agreement. But there is no evidence that Mascoll realized when his right to rescind would expire: it was irrelevant to him because rescission would lead to termination of his travel agency as an ARC agent. More specifically, there is no evidence that Mascoll knew that ARC would not seek to enlarge the time for filing a

---

2. ARC admits that it had notice of Mascoll's bankruptcy petition. A motion for appointment of counsel was not pending. The court did not mislead ARC regarding the need to protect its rights as the court provided ARC with notice of Mascoll's bankruptcy petition and the deadlines that were triggered by the filing of the petition.

§ 523(c) complaint before his right of rescission under 11 U.S.C. § 524(c)(2) would expire. Mascoll's focus was on keeping in business; he executed the documents that ARC presented in order to accomplish that. Rescinding the Repayment Agreement would have resulted in the immediate termination of his travel agency's status as an ARC agent and effectively put him out of business. So he treated the Repayment Agreement as an enforceable agreement, presumably eventually coming to believe that his right to rescind had expired. ARC too believed that the Repayment Agreement was enforceable and effectively rendered Mascoll's debt to ARC nondischargeable. Even now, ARC urges the court to enforce the agreement against Mascoll. In support of its position that the court should enforce the Repayment Agreement, ARC stated that Mascoll's payments to it under the agreement indicated Mascoll's belief "that the Repayment Agreement was in full force and effect." ARC Memorandum at 4. ARC cannot now claim that Mascoll made the very same payments in an attempt to induce ARC into not filing a timely nondischargeability complaint.

Second, ARC maintains that Mascoll never asserted his right to object to an untimely filing of a § 523(c) complaint with the intention of lulling ARC into nonaction. The court, however, does not believe that Mascoll intentionally kept silent about his right to object based on the bar date. Mascoll never held out that he waived the bar date and had no reason to assert this right during the negotiations because the issue of ARC filing an untimely § 523(c) complaint was never brought up by ARC. Believing that the stipulation to nondischargeability was enforceable, despite the court's discharge order, it probably never occurred to Mascoll (or ARC for that matter) that there would ever be a need to file a § 523(c) complaint at a later time.

Finally, ARC maintains that Mascoll's failure to inform the court about the Repayment Agreement amounted to affirmative misconduct. The court rejects this argument because, as explained above, it distorts Mascoll's obligations under the Repayment Agreement. Mascoll's lack of affirmative misconduct prevents the court from equitably tolling the bar date imposed by Rule 4007(c) for filing a § 523(c) complaint. Accordingly, equitable tolling does not apply here based on ARC's lack of due diligence and the lack of any misconduct on the part of Mascoll.

The court turns next to the equitable estoppel issue.

2.

 ARC's defense of equitable estoppel must also fail as a matter of law because ARC has not established all the necessary elements of the defense. To establish equitable estoppel, four elements must be shown:

"false representation, a purpose to invite action by the person to whom the representation was made, ignorance of the true facts by that party, and reliance."

*Hoeber v. District of Columbia Redev. Land Agency,* 483 F.Supp. 1356, 1365 (D.D.C.1980), *aff'd mem.,* 672 F.2d 894 (D.C.Cir.1981).

That ARC may have detrimentally relied on Mascoll's performance under the Repayment Agreement and on his promise to inform the court about the agreement (by not filing a timely nondischargeability complaint, declining to terminate Affordable Elegance, and allowing Mascoll to incur a debt to it of over $37,000.00), is not enough to sustain a defense of equitable estoppel. The lack of affirmative misconduct by Mascoll is fatal to ARC's establishing that equitable estoppel applies.

Moreover, the court does not believe that ARC's reliance on the Repayment Agreement or on Mascoll's informing the court about the agreement was reasonable. ARC's reliance on Mascoll's performance under the Repayment Agreement and on Mascoll to inform the court of the agreement and do what was appropriate in the bankruptcy case was misguided and a result of ARC's ignorance of the plain workings of the Bankruptcy Code. As explained

above, there are procedural requirements that a creditor must satisfy in order to prevent the obligations owed to it from being discharged. ARC was simply misguided in its belief that it was his understanding that there was no need to file a § 523(c) complaint and that there is no bar date to filing such a complaint, if the court is advised of a settlement agreement executed by the parties. ARC could have protected itself if it had taken the time to become familiar with the Bankruptcy Code. Again, the court will not make an exception for ARC's inexcusable neglect to read § 523(c)'s plain command.

Having rejected both of ARC's estoppel arguments, the court turns now to ARC's waiver argument.

### C

ARC correctly observes that a debtor can waive the Rule 4007(c) bar date for filing a nondischargeability complaint under § 523(c). ARC argues that the Repayment Agreement can be interpreted as Mascoll's waiver of the right to object to the untimeliness of any § 523(c) complaint ARC might file because as part of the agreement Mascoll stipulated that the debt he owed to ARC was nondischargeable in his pending bankruptcy case. In fact, ARC says that Mascoll's giving up his right to a discharge was consideration for ARC not terminating Affordable Elegance.

ARC maintains that when Mascoll agreed to the nondischargeability of his obligation to ARC, thereby waiving the discharge of the debt in the bankruptcy case, Mascoll necessarily waived any right to defend the dischargeability of the debt based on the bar date for filing a § 523(c) complaint. ARC reasons that the deadline imposed by Rule 4007(c) is only one part of the determination as to the dischargeability of a debt in bankruptcy, while, the determination is the whole. Therefore, ARC maintains that when Mascoll gave up his right to a discharge of the debt, Mascoll waived the bar date imposed by Rule 4007(c) because to waive the whole necessarily waives the part.

But ARC never raised waiver as a basis for relieving it of the bar of Rule 4007(c). It is too late to raise such arguments after summary judgment motions have been fully briefed and disposed of by the court. In any event, the court finds ARC's arguments meritless.

#### 1.

 ARC's argument—that by stipulating to the nondischargeability of the debt, Mascoll waived discharge of the debt—is incorrect. As observed by *In re Cole*, 226 B.R. 647, 653–654 (9th Cir. BAP 1998), Congress has provided only two methods for a Chapter 7 debtor to waive the dischargeability of specific debts:

(1) by executing a postbankruptcy written agreement, waiving a discharge of all debts, that is approved by the bankruptcy court pursuant to 11 U.S.C. § 727(a)(10); or

(2) by executing a waiver that satisfies the reaffirmation agreement requirements of 11 U.S.C. § 524(c).

Any other waiver is contrary to the Bankruptcy Code. *Cole*, 226 B.R. at 654. The execution of the Repayment Agreement between ARC and Mascoll did not comply with either of § 727(a)(10) or § 524(c). That Mascoll obtained consideration in exchange for executing the Repayment Agreement is irrelevant.

ARC argues that the prohibitions against prepetition waiver agreements in *Cole* do not apply to the instant case for two reasons: (1) the Repayment Agreement was a postpetition agreement and (2) *Cole* did not involve any fraud on the part of the debtor, as does the instant case.

The court disagrees. The *Cole* court concluded that a prepetition stipulation by the debtor in a previous state court litigation that his debt was nondischargeable was unenforceable as against public policy because it purported to waive the debtor's right to obtain a discharge. While *Cole* involved a prepetition agreement, its reasoning applies as well to postpetition agreements. *In re Stevens*, 217 B.R. 757,

760 (Bankr.D.Md.1998); *In re Catron,* 186 B.R. 194, 196 (Bankr.E.D.Va.1995).

With regard to the second point made by ARC, the court concludes that lack of any fraud by the debtor in *Cole* does not alter the applicability of *Cole's* reasoning to the instant case. The *Cole* court observed that absent an effective waiver of dischargeability, the creditor must prove fraud (or some other basis of nondischargeability) in a timely § 523(c) proceeding. The *Cole* court addressed whether fraud existed precisely because the creditor had timely filed its § 523(c) complaint, thus requiring a determination whether fraud existed such as to make the debt nondischargeable, as alleged by the parties' agreement, under 11 U.S.C. § 523(a)(2). When there is no timely § 523(c) complaint, the debtor's fraud in procuring the prepetition debt simply becomes irrelevant.

2.

■■■■ Although ARC did not obtain an effective waiver of discharge of the debt, ARC is correct that the bar date of F.R. Bankr.P. 4007(c) can itself be waived. ARC primarily relies on *In re Benedict,* 90 F.3d 50 (2d Cir.1996), to support its claim that Mascoll waived his right to object to an untimely § 523(c) complaint. In that case, the Second Circuit concluded that a debtor had intentionally waived her right to object to the extension of time given the creditor to file a dischargeability complaint.

But *Benedict* is clearly distinguishable in many respects and is thus inapplicable here: (1) the case involved a reaffirmation agreement that was properly executed under the Bankruptcy Code, (2) a stipulation executed in tandem with the reaffirmation agreement explicitly stated that if the debtor rescinded the reaffirmation agree-

ment, the creditor would have an opportunity to then file a § 523(c) complaint, (3) the debtor neglected to object to the bankruptcy court's extension of the filing deadline at a hearing addressing and resulting in an order granting the extension, and (4) there was no evidence that the creditor's failure to comply with the original filing deadline would be prejudicial to the debtor.

In contrast, in the instant case: (1) Mascoll and ARC entered into a Repayment Agreement that was not properly executed under the Bankruptcy Code to constitute an effective reaffirmation agreement, (2) the Repayment Agreement did not explicitly grant ARC the right to file a dischargeability complaint after the deadline for a § 523(c) complaint if Mascoll stopped making payments to ARC, (3) Mascoll has objected to the court's extension of the § 523(c) filing deadline, and (4) ARC's long-time failure to comply with the original filing deadline is prejudicial to Mascoll's litigation of the issue of whether anything occurred that amounted to a waiver.

■■■■ Waiver requires an unambiguous and intentional relinquishment of a known right.[3] The terms of the Repayment Agreement cannot be read as waiving the protections of § 523(c), which casts the burden on the creditor to file a timely dischargeability complaint. The Repayment Agreement did not address the bar date for filing a § 523(c) complaint. In the agreement, Mascoll acknowledges that the debt he owed to ARC is nondischargeable and that he affirms such in his pending bankruptcy case, but Mascoll does not expressly waive the Rule 4007(c) bar date. The Repayment Agreement thus cannot be construed as a waiver of the bar date. For a waiver to be present in the Repay-

---

**3.** As observed in *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citations omitted):

Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a

known right." Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.

ment Agreement, there would have to be clear and unambiguous language in the agreement addressing the question of the § 523(c) bar date.

Nonetheless, ARC correctly asserts that an intent to waive a right may be inferred from conduct inconsistent with an intent to enforce that right. *See In re K–Com Micrographics, Inc. ("K–Com"),* 159 B.R. 61 (Bankr.D.C.1993). Citing *K–Com,* ARC maintains that Mascoll waived his right to object to ARC untimely filing a § 523(c) complaint because he never asserted the right to object during negotiations with ARC. The court disagrees and finds that Mascoll's silence regarding whether he would object to an untimely dischargeability complaint under § 523(c) is not inconsistent with an intent to enforce that right.

*K–Com* involved a breach of contract claim. In denying the plaintiff's claim, this court concluded that the plaintiff's intent to waive its right to enforce a contract against the defendant in favor of arriving at a consensual agreement was inferred from the manner in which the plaintiff conducted itself in negotiating with the defendant.

There are important distinctions between the *K–Com* case and the instant case. The plaintiff in *K–Com* had a potential breach of contract claim against the defendant, which it could have asserted against the defendant at any time. And, despite its potential claim, the plaintiff acquiesced in all of the defendant's demands during the parties' year-and-a-half negotiations. Unlike the plaintiff in *K–Com,* Mascoll had no reason to assert Rule 4007(c) during the negotiations. Mascoll's right to object to an untimely nondischargeability complaint was not ripe because the issue of ARC filing an untimely § 523(c) complaint never presented itself and was never brought up by ARC. In contrast, the plain-

tiff in *K–Com* was involved in negotiations regarding issues that were at the core of the plaintiff's breach of contract claim.

Mascoll signed an agreement which failed to address the bar date issue. Mascoll did not thereby evidence any intent to relinquish the protection of the bar date. This is so even if it can be fairly inferred that he would have consented to a waiver had he been pressed on the point. It was not Mascoll's burden in the negotiations with ARC to address any deadline for filing a § 523(c) complaint. That was ARC's burden in order to protect itself.

ARC could have easily drafted language in the Repayment Agreement whereby Mascoll expressly waived the bar date. In paragraph nine of the Repayment Agreement Mascoll, as owner of Affordable Elegance, expressly waived any statutes of limitation for successor corporation liability claims that ARC might assert against him for the obligations of Mascoll's previous travel agency, Travel Associates, Inc. ARC understood the requirements that a waiver be unambiguous and intentional, but based on its belief that there would be no need for a § 523(c) complaint to ever be filed (because it believed the Repayment Agreement was enforceable and that Mascoll's stipulation to nondischargeability of the debt effectively rendered the debt nondischargeable in the bankruptcy case), it also did not feel the need to include an express waiver of the bar date. ARC cannot have the benefit of a waiver which was probably its for the asking, but which it never requested.

No showing of a relinquishment of the Rule 4007(c) bar date having been made, questions as to how a waiver could have been effected are irrelevant.[4]

---

4. The court thus need not address whether the bar date for a § 523(c) complaint could have been waived by Mascoll's attorney without his actual knowledge, or the extent to which he had to be made aware of the right

being waived. *Olano,* 507 U.S. at 733, 113 S.Ct. 1770; *New York v. Hill,* —— U.S. ——, ——, 120 S.Ct. 659, 664, 145 L.Ed.2d 560 (2000).