Paul Talcott CURRIER, Appellant,

v.

RADIO FREE EUROPE/RADIO
LIBERTY, INC., Appellee.

No. 98–7020.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 14, 1998.

Decided Nov. 13, 1998.

Peter C. Cohen argued the cause and filed the briefs for appellant.

Gil A. Abramson argued the cause for appellee. With him on the brief were David G. Leitch and Catherine E. Stetson.

Before: SILBERMAN, ROGERS, and GARLAND, Circuit Judges.

SILBERMAN, Circuit Judge:

Appellant brought a Title VII suit against his employer. The employer moved for summary judgment, asserting that appellant's suit was barred because he had not timely exhausted his administrative remedy with the EEOC. Rejecting appellant's contention that he had filed his EEOC complaint on time and his alternative argument that equitable principles should operate to toll the filing requirement, the district court granted summary judgment in favor of the employer. We reverse in part and affirm in part.

## I.

Appellant Paul Currier was hired as an independent contractor by appellee Radio Free Europe/Radio Liberty, Inc., a non-profit Delaware corporation with primary operations in Prague, the Czech Republic. Appellant was to serve as a computer network engineer and systems analyst at the Prague location, and entered into a six-month contract with appellee to begin December 31, 1995 and to expire on June 30, 1996.[1]

---

1. Of course we take the facts and all reasonable inferences therefrom in the light most favorable to appellant, the nonmoving party. *See, e.g., Taylor v. FDIC*, 132 F.3d 753, 762 (D.C.Cir. 1997). We note that appellant, then acting *pro se*, alleged neither his finality nor his equitable estoppel argument in his complaint, but only in his opposition papers to appellee's motion for summary judgment. Although appellee raises the issue of whether appellant should be entitled

In February or March 1996, Currier went to a restaurant in Prague after work. Candace O'Brien, appellee's Director of Human Resources, was seated at a table with other coworkers. O'Brien, apparently inebriated, made disparaging comments regarding appellant's sexual prowess. She then unbuttoned his pants, squeezed his penis, and exposed his testicles. The following day, O'Brien—a supervisory official who had authority to fire appellant—instructed him that "he had better get in line [with her version of what happened] or he would have a problem with her." (O'Brien's "official version" maintained that appellant had voluntarily exposed himself at the table.) O'Brien further threatened that if appellant discussed the actual incident, his employment contract would not be renewed and he would have problems during the remainder of his existing contract. Appellant took O'Brien's threats seriously, and refrained from mentioning the incident. But O'Brien often recounted the "official version," and when appellant was asked for his account by a coworker in O'Brien's presence, he disputed the "official version." O'Brien warned appellant not to make such a mistake again.

Soon thereafter, Currier encountered one of the "problems" that O'Brien had promised. At a workplace social event, appellant had a heated discussion with a female co-worker about the definition of sexual harassment. The following day, he learned that O'Brien was investigating the incident and that he was suspected of sexual harassment against the female co-worker. Although the investigation was without basis in fact, he received a termination letter from O'Brien on May 14, 1996. He viewed this accusation as a pretext for retaliating against him because of his earlier opposition to O'Brien's sexual harassment of him.

Less than a week after receiving O'Brien's termination letter, Currier met with Robert Gillette, appellee's Director of Broadcasting and a higher ranking management official than O'Brien. Appellant told Gillette that his previous encounters with O'Brien made it impossible for O'Brien to conduct a neutral investigation of appellant's asserted sexual harassment of the female co-worker. Gillette promised to conduct a second investigation that would be fair and impartial, and assured Currier that there would be "no final determination" regarding his employment status until that second investigation was concluded.

Appellant stopped coming to work after receiving his termination letter, and his contract expired by its terms on June 30, 1996. But he did not give up his efforts to return to appellee's employ. Rather, he inquired several times about the status of Gillette's investigation. Shortly before Thanksgiving 1996, he met with his former supervisor, Tom Morgan, and Gillette. Appellant was told that the investigation was still continuing and had not yet been concluded. Gillette referred to Morgan as appellant's present "boss" and said that Morgan "will always be your boss."

Appellant filed an administrative complaint with the San Francisco office of the EEOC on March 28, 1997. The EEOC issued a notice of right to sue, and appellant brought suit against appellee in the district court under Title VII, contending, first, that O'Brien had sexually harassed him, and second, that she had retaliated against him for opposing her advances by terminating his employment. Appellee moved to dismiss the complaint, or in the alternative for summary judgment, on the ground that appellant had not filed his EEOC complaint in the time required by 42 U.S.C. § 2000e–5(e)(1) (1994). Appellant argued in opposition that it was improper to start the clock when he received the termination letter because that termination decision was not a final decision. Alternatively, he argued that one of appellee's officials had misled him into believing that he would be rehired, and therefore that appellee should be equitably estopped from asserting the statutory deadline. The district court disagreed and granted summary judgment in favor of appellee.

to amend his complaint in the absence of a formal request under Fed. R. Civ. P. 15, we assume without deciding that appellant would be entitled to amend his complaint. We think this course proper given the district court's disposition of the summary judgment motion in light of all of appellant's allegations, see Civ. No. 97–1619, Mem. Op. at 11 n.3 (D.D.C. Jan. 14, 1998).

## II.

42 U.S.C. § 2000e–5(e)(1) requires that "[a] charge ... shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful unemployment practice occurred."[2] Only after exhausting this administrative remedy can an aggrieved person bring suit in district court. *Jarrell v. United States Postal Serv.,* 753 F.2d 1088, 1091 (D.C.Cir.1985) (citing *Brown v. General Servs. Admin.,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). Here, the parties agree that appellant filed his EEOC complaint on March 28, 1997. For appellant's EEOC complaint to have been timely, the precise " 'unlawful employment practice' of which he complains," *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), must have occurred within 180 days of his EEOC filing, *i.e.,* on or after September 29, 1996.

The parties disagree on when the unlawful employment practice occurred, and thus on when the statutory clock started ticking. Appellee argues that we should count from the date appellant received his termination letter, May 14, 1996; thus measured, appellant did not file his EEOC complaint for 328 days, which is too late. Appellant, while not offering a specific starting date, contends that the clock did not start ticking until long after May 14, 1996, because the May 14 termination decision was not yet a final decision. Alternatively, he argues that appellee's manager's misleading assurances of reinstatement should equitably estop appellee from asserting the statutory filing deadline.[3] Under either of appellant's approaches, of course, he would not be deemed to have failed to exhaust his administrative remedy.[4]

## A.

We begin with the question of when (if ever) appellant had notice that the termination decision was final so as to start the clock on the EEOC filing deadline. *See Ricks,* 449 U.S. at 261, 101 S.Ct. 498 (holding that the starting point for the deadline occurs when plaintiff has notice of an official, *i.e.,* not "tentative," decision). The parties agree that appellant received the termination letter from O'Brien on May 14, 1996,[5] and that O'Brien had the authority to fire him.

But were the circumstances such that O'Brien's decision was not actually final? Appellant claims that Gillette, a manager directly superior to O'Brien in appellee's organizational hierarchy, assured him less than a week after May 14 that O'Brien's decision was not a "final determination." Gillette is claimed to have again told Currier around Thanksgiving that the investigation was still ongoing; Currier was not told that Gillette's investigation had concluded by the time he filed his charges with the EEOC's San Fran-

---

2. A three-hundred-day time limit applies when the aggrieved person has initially instituted proceedings with a state or local agency with authority to grant or seek relief from the unlawful practice. *See* 42 U.S.C. § 2000e–5(e)(1). The district court concluded that this longer time limit did not apply to appellant, because appellant never instituted proceedings with the District of Columbia Office of Human Rights and because that office would not have had subject matter jurisdiction over his charge in any event. Appellant does not challenge these conclusions on appeal.

3. Appellant argues in his reply brief that appellee waived its right to assert the statute of limitations by raising that defense in its preanswer motion rather than in its answer—which has yet to be filed. This argument could not prevail because appellant asserted it for the first time on appeal. *See Singleton v. Wulff,* 428 U.S. 106, 119, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). In any event, it is without merit given our recent decision in

*Smith-Haynie v. District of Columbia,* 155 F.3d 575, 578 (D.C.Cir.1998), where we held that "an affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint."

4. Appellant focuses on the equitable estoppel argument in his brief and does not clearly articulate the finality argument as a separate issue. For ease of analysis, we treat the issues separately.

5. That appellant's six-month contract expired by its own terms on June 30, 1996 does not have any relevance for the start date because appellant does not allege any continuing violation between May 14, 1996 and June 30, 1996. *See Ricks,* 449 U.S. at 257, 101 S.Ct. 498 ("Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.").

cisco office the following March. Appellee reminds us that in *Ricks,* the Supreme Court was careful to point out that an employer that expresses an "official position" and simultaneously "indicate[s] a willingness to change its [official position]" based on the outcome of a pending grievance proceeding does not thereby render that "official position" a "tentative" decision. *Ricks,* 449 U.S. at 261, 101 S.Ct. 498. And appellee refers us to our recent warning that "a plaintiff [may not] avoid the holding in *Ricks* simply by labeling the final decision 'preliminary' and procedures to review that decision an 'integral part' of the decision process rather than collateral review of the final decision." *Harris v. Ladner,* 127 F.3d 1121, 1125 (D.C.Cir. 1997).

It is true that the reconsideration of Currier's termination would not alone render the initial decision "preliminary" rather than "final." But we think appellant points to more than mere reconsideration in his effort to identify a later starting date for the statutory clock. He claims that a supervisor of the initial decision-maker informed him shortly after that initial decision that "there would be *no final determination* ... until the conclusion of his investigation." In other words, an authoritative voice (Gillette) expressly disavowed the finality of the initial determination,[6] which implies a later starting date—though it remains unclear exactly when the decision became final—that could bring appellant's EEOC complaint within the statutory time limit. Whether Gillette did indeed make such an assurance and whether, if he did, it was true, may well be contested.[7] At this juncture, however, appellant has created a genuine issue on this material fact. *See* FED.R.CIV.P. 56(c); *Anderson v. Liberty Lob-*

*by, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**B.**

■ Even if we viewed the May 14, 1996 letter as a final decision that started the statutory clock, we would still conclude that the district court improperly granted summary judgment in favor of appellee because appellant has pointed to sufficient facts in his affidavit to create a genuine issue as to whether equitable principles should toll the EEOC filing deadline.

■ Title VII's time limit on filing a complaint with the EEOC is not jurisdictional and is subject to "estoppel[ ] and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Both equitable estoppel and equitable tolling operate, in a practical sense, to toll a limitations period. Although the Supreme Court and our court have occasionally conflated the two doctrines, *see, e.g., Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Bowden v. United States,* 106 F.3d 433, 438 (D.C.Cir.1997), they have distinct criteria. Whereas equitable tolling allows a plaintiff to avoid the bar of the limitations period if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim, *Smith-Haynie v. District of Columbia,* 155 F.3d 575, 579 (D.C.Cir. 1998), equitable estoppel in the statute of limitations context prevents a defendant from asserting untimeliness where the *defendant* has taken active steps to prevent the plaintiff from litigating in time, *id.* at 580; *see also Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450–52 (7th Cir.1990). Here, we treat appellant as asserting the latter.

---

6. We note that to our knowledge appellee did not have in place a formal direct or collateral review procedure for personnel decisions. *Cf. Harris,* 127 F.3d at 1125 (distinguishing *Ricks* on the ground that the formal reconsideration process in *Ricks* resembled collateral review rather than direct review). In such a situation, it seems appropriate to put stock in a manager's characterization of the decisionmaking process.

7. If Gillette's description of O'Brien's decision as non-final were a falsehood, appellee might be equitably estopped, *see* Part II.B *infra,* from as-

serting Title VII's EEOC filing deadline as an affirmative defense. *Cf. Ricks,* 449 U.S. at 261, 101 S.Ct. 498 (holding that an employer's offer to *reconsider* a final decision does not toll the limitations period as a matter of equity, but making no mention of the possibility that a false offer could equitably estop the employer). If appellant fails on remand to prove the facts underlying his finality argument, he still may attempt to prove the facts underlying his equitable estoppel argument under our alternative holding in Part II.B *infra.*

Again we begin with *Ricks*. There the Supreme Court reaffirmed that "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Ricks*, 449 U.S. at 261, 101 S.Ct. 498 (citing *International Union of Elec., Radio, and Mach. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 236–40, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976)). Appellee contends that because appellant's equitable estoppel argument rests only on an allegation that the termination decision was being reconsidered, it is foreclosed by *Ricks*. If that were all Currier alleges, we would agree. In that regard, Gillette's statement promising appellant a "fair and impartial investigation," standing alone, provides inadequate support for appellant's equitable estoppel theory. Similarly insufficient, by themselves, are Morgan's instruction to "hang tight" and his assurance that "it's not over yet."

■ We think, however, that an employer's affirmatively misleading statements that a grievance will be resolved *in the employee's favor* can establish an equitable estoppel. *See Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1532 (11th Cir.1992) (sex discrimination plaintiff was given "repeated assurances" that her salary would be raised to the level that other workers were receiving); *Coke v. General Adjustment Bureau*, 640 F.2d 584, 595 (5th Cir.1981) (employer misrepresented to employee that it would reinstate him). Under those circumstances, an employee understandably would be reluctant to file a complaint with the EEOC for fear he would jeopardize his chances to gain relief voluntarily.

Appellant has identified statements made by one of his supervisors from which he concluded not only that he was being reconsidered, but that he would be reinstated. Specifically, he asserted the following in his affidavit, describing a meeting shortly before Thanksgiving 1996, "Mr. Gillette referred to Mr. Morgan as 'my boss.' Mr. Gillette said that Mr. Morgan was my boss and would always be my boss," which, in context, could be understood to mean that Currier would be triumphant. To be sure, it is a bit of a stretch for appellant to have inferred from these statements that appellee intended to continue to employ him. But we cannot say, at the summary judgment stage, that no reasonable factfinder could find that this inference was plausible and that appellant made the inference at the time. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.[8]

### III.

Thus far we have discussed only appellant's retaliation claim. Appellant also asserted in his complaint a claim of hostile work environment sexual harassment, and did not carefully explain to the district court or to us how the finality and equitable estoppel arguments were applicable to his hostile environment theory.

Here we can be brief. As with his retaliation claim, appellant was obliged to file an EEOC complaint within 180 days of the "[precise] unlawful employment practice," *Ricks*, 449 U.S. at 257, 101 S.Ct. 498, of which he complains. The last day on which he could have been subjected to hostile environment sexual harassment was his last day at work; thereafter he was not in a work environment, let alone a hostile one. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Giving appellant the factual benefit of the doubt, the district court assumed his last day of work to be the day his contract expired, June 30, 1996. Counting from that date, appellant's EEOC complaint was filed 281 days later on March 28, 1997, which is too late.

■ Appellant's finality and equitable estoppel arguments are inapposite to his hostile environment claim. Gillette's assurance that O'Brien's termination decision was not a

---

**8.** Although appellant's contract would have expired by its terms on June 30, 1996 wholly apart from the May 14, 1996 termination decision, appellant had earlier been involved in negotiations with several of appellee's managers regard-ing a contract renewal. Appellant thus might reasonably have inferred from Gillette's statements that, in addition to the grievance being resolved in his favor, a new contract was on the horizon.

final determination goes only to the allegedly retaliatory termination—the hostile environment occurred, and appellant had notice of it, when he was at work. Similarly, Gillette's misleadingly optimistic statements suggesting that appellant would be rehired could not have been misleading as to appellee's position toward the hostile environment allegedly created by O'Brien. Those statements could only lull appellant into believing that his retaliation claim would be remedied, not into believing that the already experienced harm from the episodes of hostile environment sexual harassment would somehow be cured. Accordingly, the district court correctly granted summary judgment in favor of appellee on the hostile environment claim.

\* \* \* \* \* \*

For the foregoing reasons, the district court's decision to grant summary judgment to appellee is reversed on appellant's retaliation claim and affirmed on appellant's hostile work environment claim.

*So ordered.*