In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2710

Romelia Hazel Frazier,

Plaintiff-Appellant,

v.

Delco Electronics Corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 97-C-690--J.P. Stadtmueller, Chief Judge.

Argued October 26, 2000--Decided August 24, 2001



   Before Bauer, Posner, and Ripple, Circuit
Judges.

   Posner, Circuit Judge.  The plaintiff
brought suit against her employer,
charging sexual harassment in violation
of Title VII of the Civil Rights Act of
1964 and a failure to accommodate a
disability in violation of the Americans
with Disabilities Act. The district court
granted summary judgment for the
defendant. So far as the charge of sexual
harassment is concerned, the court held
that the plaintiff could not use the
doctrine of continuing violation to avoid
the 300-day administrative statute of
limitations applicable to Title VII suits
in Wisconsin and that in any event she
had failed to show that the alleged
harassment was based on her sex.

   Taken as favorably to the plaintiff as
the record permits, the facts tell the
following story. Late in 1991 the
plaintiff's car was stolen, and from then
till she got a new car in February of the
following year she rode to work with
another worker in Delco's Milwaukee
plant, Bester Spears. He lived near her
and had just been divorced by his wife,
who by a curious coincidence had the same
first name as the plaintiff (the
plaintiff uses Hazel, her middle name, as
her first name) and the same date of
birth. These coincidences seem to have

fascinated Spears, who after he stopped driving Frazier to work would frequently drive past her home and sometimes park in front of it and watch her. After some weeks or months of this, he approached her at work and told her he had seen her husband barbecuing in his backyard. She told him to stay away from her. He was angered by her rebuff and took to calling her "bitch" when he encountered her in the workplace. In November 1992 came the explosion. Spears approached Frazier as she was talking to a coworker, and to avoid being brushed by him she stepped back. This set him off. He started screaming at her, saying he was "sick and tired of her goddamn ass." He screamed that she was a "slut," a "motherfucker," a "whore," and a "motherfucking whore." When she asked him whether he was talking to her, he replied, "Yes, you fucking whore, I'm talking to you, you motherfucker. I'm sick and tired of your motherfucking ass. You goddamn bitch, you slut, walking by me like I'm dirt." He threatened to take her outside and "kick her motherfucking ass" and kill her. He acted as if he were going to hit her. A male coworker grabbed him and pushed him out of the area. The coworker then escorted Frazier to the nurse's office, while Spears shouted at her to "go outside to settle the matter."

Frazier complained immediately to her supervisor. A union representative, Alston, interviewed Spears, who admitted that he had called Frazier names, explaining that she had stopped talking to him in the last couple of months. Alston thought that Spears looked as if he were about to explode with anger.

In the following weeks and months, Spears did not speak to Frazier, but he glared at her ominously. Although he worked at the opposite end of a large plant, he haunted her end of it, staring through the window of her work area and sometimes pushing the door open and sticking his head in and staring at her. She complained continuously both to management and to the union. In March of 1993, Alston, the union representative handling the matter, told her not to file a formal grievance because he was working with management to resolve the problem.

The following month Alston met with management and after the meeting told

Frazier that Spears had been instructed to stay away from Frazier's work area and refrain from the actions she had complained about. Four days later, Frazier obtained a temporary restraining order, and the following month an injunction, forbidding Spears to have any contact with her for one year.

In June, Spears was transferred to a Delco plant in the Milwaukee suburbs and Frazier breathed a sigh of relief. Not for long; for in August she was transferred to the same plant. She told her union representative at this plant about the injunction and for a time was able to avoid Spears. But beginning in September of 1993 Spears began appearing unexpectedly three or four times a day in Frazier's work area. He would glare at her, as before, sometimes sticking his head inside the door to the area and making faces at her. Once, in December, he jumped in front of a forklift that she was driving, forcing her to stop abruptly. He stood laughing and making faces at her. She called the police, and an officer came to the plant and told Spears to keep away from her.

The next month Spears was transferred to a different shift and again Frazier thought she was free of him. But he returned to her shift in March. Throughout all this the company had not disciplined Spears, and now it told Frazier that it would do nothing to prevent him from contacting her at work. This was the last straw. Frazier had a nervous breakdown and was on sick leave for almost two years, not returning until Spears moved to Louisiana.
It was in March of 1994 that she filed her complaint with the EEOC, and this means that the statute of limitations, unless tolled, barred her from complaining about Title VII violations that occurred before May of 1993. The worst incident had occurred months earlier, in November 1992, when Spears had screamed at her, menaced her, and threatened to kill her; and the defendant argues that she should have filed her complaint within 300 days of that, since she argues that the company, though on notice that she was being harassed, never did anything to stop it.

This might be correct if the defendant were Spears rather than the company, and

the charge was assault or threat. But a violation of Title VII that is based on a claim of harassment by a coworker doesn't occur until the employer has failed to take reasonable steps to bring the harassment to an end. E.g., Hostetler v. Quality Dining, Inc., 218 F.3d 798, 809 (7th Cir. 2000); Smith v. Sheahan, 189 F.3d 529, 533 (7th Cir. 1999); Star v. West, 237 F.3d 1036, 1038 (9th Cir. 2001); Breda v. Wolf Camera & Video, 222 F.3d 886, 889 (11th Cir. 2000). Obviously that did not occur in November 1992. The company could not be expected to rectify a situation within minutes of its occurrence. It wanted time to investigate the matter in order to protect Spears's rights. It was entitled to take some time and until that time passed its failure to act would not be actionable and so the statute of limitations would not begin to run. Delaware State College v. Ricks, 449 U.S. 250, 257, 259 (1980); Cada v. Baxter Healthcare Corp., 920 F.2d 446, 449 (7th Cir. 1990). This is a principle more fun damental than the doctrine of continuing violation, which in a sexual harassment case permits the plaintiff to delay suit until an ambiguous situation of possible but uncertain harassment has ripened into an unmistakable case, a case that any reasonable person would recognize as harassment. Russell v. Board of Trustees, 243 F.3d 336, 343 (7th Cir. 2001); DeClue v. Central Illinois Light Co., 223 F.3d 435, 435 (7th Cir. 2000); Galloway v. General Motors Service Parts Operations, 78 F.3d 1164, 1166 (7th Cir. 1996); O'Rourke v. City of Providence, 235 F.3d 713, 732 (1st Cir. 2001); Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 481–83 (3d Cir. 1997). When that happens the victim must move promptly to alert theemployer and the employer must move promptly to investigate and resolve the situation; but only when it becomes clear that the employer has failed to resolve it in a timely fashion does the statute of limitations begin to run. Garrison v. Burke, 165 F.3d 565, 570 (7th Cir. 1999); Galloway v. General Motors Service Parts Operations, supra, 78 F.3d at 1166; Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 532 n. 11 (7th Cir. 1993). The company cannot plead for time to rectify a situation of harassment, the plea we accepted in Zimmerman v. Cook County Sheriff's Dept., 96 F.3d 1017, 1019 (7th Cir. 1996), but deny the time to the victim of the harassment to learn that

the company has failed to rectify it after all.

When, as may have happened here (whether it really happened is for a jury to decide), the victim of harassment is reasonably induced by the defendant or others to believe that the situation has been or is in reasonable course of being resolved, the statute of limitations is tolled. It is tolled pursuant either to the doctrine of equitable estoppel, if the defendant was responsible for creating the false impression of achieved or imminent resolution, e.g., Wheeldon v. Monon Corp., 946 F.2d 533, 537-38 (7th Cir. 1991); Cada v. Baxter Healthcare Corp., supra, 920 F.2d at 450-51; Currier v. Radio Free Europe/Radio Liberty, Inc., 159 F.3d 1363, 1368 (D.C. Cir. 1998), or equitable tolling, if the responsibility lies elsewhere. E.g., Cada v. Baxter Healthcare Corp., supra, 920 F.2d at 451; Donald v. Cook County Sheriff's Dept., 95 F.3d 548, 561-62 (7th Cir. 1996). Having complained promptly after the November blow-up (and we do not understand Delco to be arguing that she should have complained earlier), Frazier had every reason to believe the matter well in hand. She received further assurance from Alston, the union representative (who may well have had greater credibility with her than management) in March 1993 and again at the end of April after Alston's meeting with management.

Things quieted after that and she had no reason to believe the harassment was continuing, especially when Spears was transferred in June to another plant. It was not until August that she found herself again in the same plant with him, and the harassment restarted the following month. The critical period, so far as her tolling argument is concerned, is between September 1993 and January 1994, since in January Spears went on a different shift and when he returned, in March, she finally filed her administrative complaint. Maybe when the harassment resumed in September she should have realized the company wasn't going to do anything to restrain Spears. But this is not so clear that it can be determined on a motion for summary judgment. Frazier complained to supervisory personnel throughout the September-January period, and rather than telling her that they would do nothing to

restrain him they gave her the impression (or so a jury could find) that they were working on the problem. The creation of a misleading impression that causes a plaintiff to delay suing is a conventional basis of equitable estoppel. E.g., Currier v. Radio Free Europe/Radio Liberty, Inc., supra, 159 F.3d at 1368; Cocke v. Merrill Lynch & Co., 817 F.2d 1559, 1561-62 (11th Cir. 1987) (per curiam).

But all this is of no moment if the district court was right that there is no evidence that Spears's behavior was motivated by Frazier's being a woman. What is true is that there is no evidence that Spears had a sexual or romantic interest in Frazier, though that is possible. But many cases of sexual harassment involve hostility to female coworkers because they are female. Sometimes it is because the men feel that their macho workplace has been "invaded" by women, whose presence damages the self-esteem that the men derive from thinking they are doing work that only men can do. Carr v. Allison Gas Turbine Division, 32 F.3d 1007 (7th Cir. 1994), was such a case. This is not. But what does seem to be involved here, or so at least a reasonable jury might find, was a sense on Spears's part that as a man he was owed gratitude and deference by a woman whom he had assisted (by driving her to work until she got a new car), and that the denial of this obligation was an affront to his manhood. We find it difficult to imagine a man treating another man the way Spears treated Frazier--men do not normally respond with such intensity to a spurned offer of friendship, call each other sluts and whores, make faces at each other, and stalk each other. Those are characteristic forms of male aggression against women. See, e.g., McDonnell v. Cisneros, 84 F.3d 256, 259-60 (7th Cir. 1996); Williams v. General Motors Corp., 187 F.3d 563, 565-66 (6th Cir. 1999); Hillary S. Axam and Deborah Zalesne, "Simulated Sodomy and Other Forms of Heterosexual Horseplay: Same Sex Sexual Harassment, Workplace Gender Hierarchies, and the Myth of the Gender Monolith Before and After Oncale," 11 Yale J.L. & Feminism 155, 161-73 (1999).

We have not finished with the Title VII claim. Delco advances an alternative

ground for affirmance, one urged below but not reached by the district court, that Spears's conduct toward Frazier was not sufficiently egregious to render the workplace intolerable for her, and so the company's failure to remedy it did not alter the conditions of her employment and so was not a violation of Title VII. E.g., Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); Pryor v. Seyfarth, Shaw, Fairweather & Geraldson, 212 F.3d 976, 978 (7th Cir. 2000); Minor v. Ivy Tech State College, 174 F.3d 855, 858 (7th Cir. 1999); Baskerville v. Culligan International Co., 50 F.3d 428, 430-31 (7th Cir. 1995); Burnett v. Tyco Corp., 203 F.3d 980, 982 (6th Cir. 2000). The argument occupies less than three pages of the defendant's brief, with one of them being given over to generalities. The brief points out that Spears did not make sexual remarks or gestures. But as we noted earlier, that is not the kind of sexual harassment alleged here. The brief says that Spears never touched Frazier, but if not restrained by a coworker in the November blow-up he might well have done so. A threat to kill cannot easily be explained away as merely "rude or childish behavior" (as the district court had put it). It is true that the threat itself was not actionable; Delco did not violate Frazier's rights until it failed to take effective action to protect her against Spears. Hostetler v. Quality Dining, Inc., supra, 218 F.3d at 811. The threat, however, provides the essential context for appraising the gravity of the later acts of harassment. See United Air Lines Inc. v. Evans, 431 U.S. 553, 558 (1977); Kortan v. California Youth Authority, 217 F.3d 1104, 1109 (9th Cir. 2000); Rorie v. United Parcel Service, Inc., 151 F.3d 757, 761 (8th Cir. 1998). To be glared at by someone who is irritated by your having barged into line ahead of him is a very different experience from being glared at by a person who has threatened to kill you.

Delco's last point concerning this issue is that Spears never "stalked" Frazier because the dictionary defines stalking as "pursuing quarry or prey stealthily," and Spears wasn't stealthy. But as the words "quarry" and "prey" reveal, the definition refers to hunters stalking animals, not to men harassing women by following them about. It is common in the latter form of stalking to make your

presence known to the victim. See, e.g., Wis. Stat. Ann. sec. 940.32 (2000), which defines stalking as inducing fear of bodily injury in a person by repeatedly maintaining visual or physical proximity to her. The stalking victim who doesn't know that she is being stalked is not in fear of being injured.

A jury may conclude that Spears's conduct was insufficiently egregious to make the workplace intolerable for a reasonable person, but the conclusion is not inevitable. A jury might find that Spears's persistent, crazy, hostile behavior toward Frazier after his threat to kill her was sufficiently ominous to make the workplace intolerable even to a person of average steadfastness.

So the dismissal of the Title VII claim must be reversed, but we agree with the district court that Frazier's ADA claim has no merit. She argues that the nervous collapse that she suffered as a result of Spears's conduct and the company's failure to do anything about it was a disability that the company failed to accommodate. She did not return to work until Spears transferred to a plant in a different state, and she argues that the company's failure to isolate him from her prevented her from returning to work sooner.

The ADA defines disability as the impairment of a major life activity, such as walking, seeing, and reproduction. 42 U.S.C. sec. 12102(2)(A); Bragdon v. Abbott, 524 U.S. 624, 638-39 (1998); Amadio v. Ford Motor Co., 238 F.3d 919, 925 (7th Cir. 2001). Frazier does not have a disability in that sense. She is perfectly healthy. She can do anything that any normal person can do--except work in proximity to Bester Spears. Working in proximity to Bester Spears is not a major life activity.

Affirmed in Part, Reversed in Part, and Remanded.