Richard E. LAW, et al., Plaintiffs

v.

CONTINENTAL AIRLINES
INC., Defendant.

No. CIV. 01–1711(RJL).

United States District Court,
District of Columbia.

Sept. 23, 2003.

Daniel S. Kozman, Koonz, McKenney, Johnson, DePaolis & Lightfoot, L.L.P., Washington, DC, for Richard E. Law, John S. Davis, David A. Krichbaum.

Anna Lincoln Spradlin, Jon A. Geier, Paul, Hastings, Janofsky & Walker, L.L.P., Washington, DC, for Continental Airlines, Inc.

## MEMORANDUM ORDER

LEON, District Judge.

Defendant, Continental Airlines, Inc. ("Continental"), has filed a motion contending that it is entitled to summary judgment because the plaintiffs, Richard E. Law, John S. Davis, and David A. Krichbaum, failed to file their complaint with the Equal Employment Opportunity Commission ("EEOC") by the deadline set forth in the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and are therefore time-barred from bringing this suit. Plaintiffs, however, contend that the statute of limitations has been tolled due to defendants' "continuing violations" of the ADEA and due to equitable estoppel. For the following reasons, the Court concludes that the statute has not been tolled and therefore grants defendants' motion for summary judgment.

## BACKGROUND

Plaintiffs Law, Davis, and Krichbaum are Continental pilots who each submitted a bid, "Bid 00–06" in this instance, for a captain position with Continental sometime during the month of June, 1999. *See* Benton Decl. ¶ 2. At the time they submitted their bids, each plaintiff was a first officer with Continental and 58 years old or older. On July 23, 1999, Continental informed the plaintiffs that they had not been awarded the captain position. *Id.* In the case of each plaintiff, a junior pilot was instead awarded the captain job.

One, if not the only, reason plaintiffs were denied a captain position is the "Age 60 Rule." The Age 60 Rule was promulgated by the Federal Aviation Authority ("FAA") and mandates that pilots aged sixty years old or older cannot hold first officer or captain positions on an aircraft, although they can sit as the second officer.[1] *See* Hr'g Tr. Sept. 17, 2002 at 9. As a result of the rule, if Continental trains a 59 year old pilot for a captain position, Continental will get less than one year of return on its training of the pilot before it must remove him or her from the captain position.

For this reason, Continental and the International Association of Continental Pilots ("IACP"), the pilots' former union, reached a compromise that recognizes the Age 60 Rule while also acknowledging the concerns of qualified pilots who cannot be promoted to captain due to their age. The compromise provides that pilots aged 58

---

1. The pilots do not contest the Age 60 Rule at this time.

years and older will not be promoted to any position that requires additional training. However, those pilots will receive the salary they would have earned if they had been promoted to captain. *See* Hr'g Tr. at 11, 27 (statement of defendant's counsel). This payment to otherwise qualified pilots who cannot be promoted due to the Age 60 Rule is commonly referred to as "pay protection."

At issue in this suit are two provisions of the 1995 and 1998 collective bargaining agreements ("CBA") between Continental and IACP. Both provisions provide pay protection to pilots, but apply in different circumstances. The first provision, Section 3, Part 12 ("Section 3") of the CBA, provides pay protection for senior pilots *who have been awarded* a "bid," i.e. an available position, and where a junior pilot who was also awarded a bid advances to the position before the senior pilot.[2] Under Section 3, the senior pilot receives pay protection upon the "advancement" of the junior person, that is, when the junior pilot *begins training* for the new position as well as receiving the higher pay of the new position. *See* Compl. ¶ 16. The result of Section 3 is that a senior pilot and a junior pilot begin receiving the increased salary of the new position on the same date: the date of the junior pilot's advancement.

Section 3 provides pay protection for senior pilots in this situation regardless of age.

Section 9, Part 3, K ("Section 9") of the CBA, however, applies *only* to those pilots age 58 and older *who are denied a bid* due to the Age 60 Rule. Under Section 9, the pilots who are denied a bid due to the Age 60 Rule receive pay protection on the "effective date of the bid," that is, the date the junior pilot formally begins his new position *after* completing the relevant training.[3] The difference between Section 3 and Section 9—and the basis of plaintiffs' complaint—is that the "effective date" of the bid occurs *after* the "date of advancement," which includes the training period. As a result, senior pilots receive pay protection at a later date under Section 9 than under Section 3. Additionally, the junior pilot will receive the higher pay before the senior pilot begins receiving pay protection. Plaintiffs argue that awarding pay protection to pilots age 58 and older at a later date under Section 9 than under Section 3 constitutes age discrimination in violation of the ADEA.

When plaintiffs were denied the captain positions on July 23, 1999, Section 9 of the CBA applied when calculating their pay

2. If the pilot is awarded the bid, the airline has accepted him for that position. Pilots are generally awarded bids based on seniority. Section 3 provides, in part:

> A. A pilot who through no fault of his own is not in his awarded position when the effective date of a system staffing award occurs will be pay protected.
> B. A pilot will be pay protected when a junior pilot is advanced to his new sub-base and status before a more senior pilot is advanced to the same sub-base and status on the same system staffing award. In addition, a senior pilot will be pay protected where a junior pilot is paid and advanced for upgrade in the new sub-base and status before the senior pilot, if

both were awarded the new status on the same system staffing award.

3. *See* Pls.'s Ex. 3. Section 9 of the CBA provides, in part:

> 2. Other than Second officers, a pilot who is 58 years old or older on the effective date of a system staffing will not be awarded a higher status (unless obviously qualified in that status and equipment) but will be pay protected for the higher status, if bid, on the effective date of the bid for as long as his seniority entitles him to that status. This does not prevent the pilot from being awarded the higher status on his current equipment if previously qualified in that status.

protection as each plaintiff was aged 58 years or older at that time. Almost seven months after learning their bids were denied, plaintiffs Law and Davis, filed grievances with Continental on February 10, 2000, and February 12, 2000, respectively. In those grievances, Law and Davis challenged Continental's application of Section 9 when calculating their pay protection. *See* Def.'s Mot. for Summ. J, Exs. B & C; Pls.'s Opp'n at 6. In a declaration to this Court, Law stated that he believed his grievance would result in the retroactive payment of pay protection for the period between the date of advancement, and the effective date of the bid, because three years earlier, in 1996, Continental pilots who were also denied positions pursuant to Section 9 had been awarded backpay through the grievance process for that same period. *See* Law Decl. ¶¶ 18–21. Shortly thereafter, however, Continental denied Law's and Davis's grievances on February 28, 2000, and February 29, 2000. Law appealed the denial, but Continental affirmed the denial of the grievance on August 3, 2000. *See* Law Decl. ¶ 23; Pl.'s Opp'n, Ex. 8. Despite Continental's rejection of both the grievance and the appeal, Law and Davis did not file EEOC charges until approximately one year later on January 24, 2001 and April 24, 2001, respectively. Law Decl. ¶ 27.

## STANDARD OF REVIEW

Summary judgment is appropriate under Federal Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). The moving party bears the initial burden of identifying the basis of its motion and the pleadings, depositions, answers to interrogatories, admissions on file, or affidavits which is believes demonstrate the absence of material fact. *See Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548.

To determine which facts are material, the Court must examine the substantive law underlying the claim. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense, thereby affecting the outcome of the action. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Additionally, to be genuine, the issue of fact must be supported by sufficient admissible evidence such that a reasonable trier of fact could find for the non-moving party. *See Laningham v. United States Navy,* 813 F.2d 1236, 1242–43 (D.C.Cir.1987). An adverse party's or non-moving party's mere allegations or denials are insufficient to defeat an otherwise proper motion for summary judgment. Instead, the non-moving party must present, by affidavits or otherwise, specific facts that demonstrate there is a genuine issue for trial. *See id.* at 248–49, 106 S.Ct. 2505. At all times, the Court must construe all evidence presented in favor of the non-moving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## ANALYSIS

Although the Supreme Court and Congress have expressed their support of strict adherence to deadlines for filing EEOC charges in order to promote evenhanded administration of the law and encourage prompt resolution of employment discrimination claims, *see Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 108–09, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), some exceptions to the statute of limitations exist.

Plaintiffs argue that even if they did not file EEOC charges within the 300–day deadline set forth in the ADEA, their filing was nonetheless timely as the continuing violation doctrine and equitable estoppel exceptions to the statute of limitations apply here. The Court, however, does not agree, and because the plaintiffs did not file their EEOC charges within the 300–day deadline set by the ADEA, the Court grants defendants motion for summary judgment.

### Plaintiffs Fail to Establish a Continuing Violation Within the Statutory Period

Here, as mentioned previously, plaintiffs Law and Davis filed EEOC charges on January 24, 2001 and April 24, 2001, respectively. Despite the defendant's argument that they are time-barred from bringing this suit, plaintiffs insist that their filing was timely as the denial of pay protection was a continuing violation of the ADEA that occurred within the statutory period. While the Court recognizes that the denial of pay protection was a repeated occurrence in that plaintiffs did not receive pay protection with the payment of each paycheck, these occurrences nonetheless do not constitute the type of continuing violation that tolls the statute of limitations.

■ In order to successfully assert the continuing violation doctrine, plaintiffs must show two things. First, plaintiffs must show that "an actual violation . . . occurred during the statutory period," *Palmer v. Kelly,* 17 F.3d 1490, 1496 (D.C.Cir.1994), that is, a discriminatory act took place within 300 days of Law and Davis filing their EEOC charges. As defendants contend, that date for Law is March 30, 2000, and for Davis is June 28, 2000. Second, plaintiffs must show that the "discriminatory act was part of a series of related discriminatory acts, or was

caused by a discriminatory system, in effect both before and after the limitations period." *Id.*

Before the Court can determine whether an actual violation occurred within the statutory period, it must first determine which "act" is being challenged by the plaintiffs as discriminatory. The parties vigorously dispute this point. Plaintiffs insist that they are not challenging Continental's failure to promote them to captain; rather, they maintain that *the application* of Section 9 when calculating their pay protection is the discriminatory act which prompted this suit. Defendant, however, charges that plaintiffs' challenge to the application of Section 9 is mere ruse. According to the defendant, plaintiffs have no choice but to insist that the "discriminatory act" is the application of Section 9, and not the bid denial, because if the bid denial were the discriminatory act, the plaintiffs are clearly barred by the statute of limitations as it occurred more than 300 days before the filing of the EEOC charges. The only way plaintiffs can press their suit here, argue the defendants, is to style their complaint against as one challenging Section 9, rather than Continental's failure to promote them to captain.

■ As plaintiffs received pay protection under Section 9 within the statutory period, the Court, therefore, must, in effect, determine whether each paycheck in which plaintiffs did not receive pay protection constitutes a "discriminatory act" that is actionable here. According to plaintiffs, "each reduced paycheck received . . . is a new, distinct violation of the ADEA." Pls.'s Opp'n at 9. To make this argument, plaintiffs rely on the Supreme Court's holding in *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) and this Circuit's interpretation of that holding in *Anderson v. Zubieta,* 180 F.3d 329

(D.C.Cir.1999). The Court, however, concludes that plaintiffs' reliance on these cases is misplaced, and that an actionable violation of the ADEA did not occur within the 300–day statutory period of the ADEA.

In *Bazemore,* the Supreme Court addressed the salary disparities between white and black workers in a state agriculture program. *See Bazemore,* 478 U.S. at 389, 106 S.Ct. 3000. Black employees of the agriculture program brought a Title VII action challenging "racial discrimination in employment and the provision of services." *Id.* at 391, 106 S.Ct. 3000. The Supreme Court held that "[e]ach week's paycheck that delivers less to a black than to a *similarly situated* white is actionable under Title VII." *Id.* at 395, 106 S.Ct. 3000. This Circuit further expanded on this holding in *Zubieta,* when it addressed whether a salary and benefits program discriminated on the basis of race and national origin in violation of Title VII. The basis of the Circuit's holding in *Zubieta*—that each paycheck calculated under a discriminatory salary policy was a separate, actionable violation of Title VII—is that the continued application of the policy resulted in treating differently similarly situated employees.

Unlike the salary and benefits policies at issue in *Bazemore* and *Zubieta,* Section 9 of the CBA does not differentiate on the basis of age between similarly situated employees. Simply stated, the pilots who fall under Section 9 are in a completely different position than the pilots who receive pay protection under Section 3. Section 9 applies only to pilots who are denied a bid due to the FAA Age 60 Rule; Section 3 applies to pilots who were awarded a bid, but advance to that position after a junior pilot. Pay protection under Section 3 is temporary, and paid only for that time period between a junior pilot's and the senior pilot's advancement. In contrast, under Section 9, the pilot who is denied a bid, and who will never assume the new position, is paid as if he were awarded the bid until the time of his retirement.

██ Because Section 9 does not treat similarly situated employees differently, the Court cannot conclude as the Supreme Court did in *Bazemore* and this Circuit did in *Zubieta* that an actual violation occurred within the statutory period in this case. Even if an actual violation occurred within the statutory period, the Court finds that plaintiffs could not assert the continuing violation doctrine in order to save their claims. Both Law and Davis made plain when filing their grievances on February 10, 2000, and February 12, 2000, respectively, that they believed Section 9 of the CBA was a discriminatory policy. *See* Davis Decl. ¶ 5; Def.'s Mot. Exs. B & C. Yet, they waited almost one year before filing their EEOC charges—well outside the statutory period. Given plaintiffs' recognition in these grievances that they believed the provision was discriminatory, the Court believes this situation is analogous to that presented in *Taylor v. FDIC,* 132 F.3d 753 (D.C.Cir.1997). In *Taylor,* this Circuit held that plaintiffs could not avail themselves of the continuing violation doctrine in order to defeat the statute of limitations where the discriminatory nature of the employment action is manifest from the start. *See id.* at 765. As this Circuit stated in *Taylor,* "a continuing violation 'is one that could not reasonably have been expected to be made subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period.'" *Id.* (citing *Dasgupta v. University of Wisconsin Board of Regents,* 121 F.3d 1138, 1139 (7th Cir.1997)). In this instance, plaintiffs' filing of a grievance makes plain that they believed *before* the limitations period that Section 9 was a

discriminatory policy. Therefore, even if each non-payment constituted a violation during the statutory period, plaintiffs could not avail themselves of the continuing violations doctrine because its character as a violation was clear to the plaintiffs at its inception.

■ Similarly, the Court finds unconvincing plaintiffs' argument that the statute of limitations is tolled due to equitable tolling. Plaintiffs argue that Continental's own conduct led them to file their EEOC charge after the statutory period, because Continental had awarded backpay through the grievance process to other Continental pilots who challenged Section 9. Although plaintiffs assert an equitable tolling exception to the statute of limitations period, it is more properly analyzed under an equitable estoppel framework. *See Currier v. Radio Free Europe/Radio Liberty, Inc.,* 159 F.3d 1363, 1367 (D.C.Cir.1998) (explaining that equitable tolling applies when despite all due diligence the plaintiff is unable to obtain necessary information for his claim and that equitable estoppel applies when the defendant has taken active steps to prevent the plaintiff from timely filing). However, even under an equitable estoppel analysis, plaintiffs' failed to show that defendant took action that would induce plaintiffs to delay filing their EEOC charges.

Plaintiffs' equitable estoppel claim fails, because Continental's award of backpay to other Continental pilots does not constitute an affirmative, misleading statement by Continental that *plaintiffs'* grievances would be granted. First, Continental denied plaintiffs' at the initial grievance stage, (Law Decl. ¶ 22), and at the appellate grievance stage. At that time, Continental informed plaintiffs via letter that the previous grievances had been awarded in error. (Aug. 3, 2000 letter). The situation here is in no way analogous to the one before this Circuit in *Currier,* where a

representative from the employer implied that the grievance would be resolved in the employee's favor. *See Currier,* 159 F.3d at 1368. Although the August 3, 2000 letter is within the 300-day period, the initial denial of Law's and Davis' grievances occurred outside the 300-day period in February 2000; at no time did Continental give any indication to plaintiffs that it was going to reverse its initial grievance determination in order to award them backpay.

■ In addition, the Court finds no support for plaintiffs' contention that "[w]hen an employer like Continental grants a grievance, it establishes a precedent that the employer and its employees can expect will be followed in the future." Pls. Surreply at 10. Although grievances can act as precedent, *see Ostrofsky v. United Steelworkers of America,* 171 F.Supp. 782, 793 (D.Md.1959), they are not binding on the employer. In this instance, where there is no evidence that Continental informed plaintiffs or their representatives that prior grievance decisions would operate like precedent, and where a fellow pilot—who was not a representative of Continental—informed plaintiffs about the prior grievances, *see* Law Decl., Ex. 6, the Court finds that the equitable estoppel period does not apply to toll the statute of limitations.

## CONCLUSION

For the reasons set forth above, the Court hereby

GRANTS defendant's motion for summary judgment; and

ORDERS that judgment be entered for the defendant and plaintiffs' complaint be dismissed with prejudice.

SO ORDERED.